UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT COLOZZI, TAMMY AIKEN AND CHRISTINE CORREIA, *on behalf of themselves and all other employees similarly situated,*<br><br>*Plaintiffs,*<br><br>v.<br><br>ST. JOSEPH'S HOSPITAL HEALTH CENTER, ST. JOSEPH'S HOSPITAL, THEODORE M. PASINSKI, FRANK PANZETTA, ST. JOSEPH'S HEALTH CENTER PROPERTIES INC., ST. JOSEPH'S HOSPITAL HEALTH CENTER FOUNDATION, INC., THE AUXILLARY OF ST. JOSEPH'S HOSPITAL HEALTH CENTER, INC., FRANCISCAN HEALTH SUPPORT SERVICES, LLC, FRANCISCAN HEALTH SUPPORT, INC., FRANCISCAN MANAGEMENT SERVICES, INC., FRANCISCAN ASSOCIATES, INC., ALUMNAE OF ST. JOSEPH'S HOSPITAL TRAINING SCHOOL FOR NURSES, ALUMNI ASSOCIATION ST. JOSEPH'S COLLEGE OF NURSING INC., ST. JOSEPH'S HEALTH CENTER MEDICAL OFFICE BUILDING, LLC, ST. JOSEPH'S HOSPITAL FOUNDATION-ELMIRA, N.Y. INC., HEALTH CARE MANAGEMENT ADMINISTRATORS, INC., SISTERS OF ST. FRANCIS OF THE NEUMANN COMMUNITIES AND ST. JOSEPH'S HOSPITAL HEALTH CENTER EMPLOYEES 401K SAVINGS AND RETIREMENT PLAN AND TRUST,<br><br>*Defendants.* | CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL<br><br>Civil Action<br><br>No. _____ |

## NATURE OF CLAIM

1.   This is a proceeding for declaratory relief and monetary damages to: redress the deprivation of rights secured to plaintiffs, Robert Colozzi, Tammy Aiken and Christine Correia individually, as well as all other employees similarly situated, under the Fair Labor

Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"); the New York Labor Law and under the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1001 *et seq.*

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343 (3) and (4) conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights; under 28 U.S.C. § 1337 conferring jurisdiction of any civil action arising under any Act of Congress regulating interstate commerce; and under the Declaratory Judgment Statute, 28 U.S.C. § 2201.

3. This Court's supplemental jurisdiction of claims arising under New York State Labor Law is also invoked.

4. Venue is appropriate in the Northern District of New York since the allegations arose in this district and the plaintiffs reside in this district.

## CLASS ACTION ALLEGATIONS

5. The claims arising under New York State Labor Law are properly maintainable as a class action under Federal Rule of Civil Procedure 23.

6. The class action is maintainable under subsections (1), (2) and (3) of Rule 23(b).

7. The class size is believed to be over 50 employees.

8. The Named Plaintiffs will adequately represent the interests of the class members because they are similarly situated to the class members and their claims are typical of, and concurrent to, the claims of the other class members.

9. There are no known conflicts of interest between the Named Plaintiffs and the other class members.

10. The class counsel, Dolin, Thomas & Solomon LLP, is qualified and able to litigate the class members' claims.

11. The class counsel concentrates its practice in employment litigation, and its attorneys are experienced in class action litigation, including class actions arising under federal and state wage and hour laws.

12. Common questions of law and fact predominate in this action because the claims of all class members are based on whether defendants' practice of not paying nonexempt employees for all hours worked and/or statutory overtime for hours worked over 40 per week violates New York State Labor Law.

13. The class action is maintainable under subsections (2) and (3) of Rule 23(b) because the plaintiffs seek injunctive relief, common questions of law and fact predominate among the class members and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## PARTIES

### A.  Defendants

14. Collectively, defendants St. Joseph's Hospital Health Center, St. Joseph's Hospital, Theodore M. Pasinski, Frank Panzetta, St. Joseph's Health Center Properties Inc., St. Joseph's Hospital Health Center Foundation, Inc., The Auxillary of St. Joseph's Hospital Health Center, Inc., Franciscan Health Support Services, LLC, Franciscan Health Support, Inc., Franciscan Management Services, Inc., Franciscan Associates, Inc., Alumnae of St. Joseph's Hospital Training School For Nurses, Alumni Association St. Joseph's College of

Nursing Inc., St. Joseph's Health Center Medical Office Building, LLC, St. Joseph's Hospital Foundation-Elmira, N.Y. Inc., Health Care Management Administrators, Inc., Sisters of St. Francis of The Neumann Communities and St. Joseph's Hospital Health Center Employees 401K Savings and Retirement Plan and Trust (collectively, "St. Joseph's") are related organizations through, for example, common membership, governing bodies, trustees and/or officers and benefit plans.

15. St. Joseph's is an enterprise engaged in the operation of a hospital and/or the care of the sick and is a healthcare consortium.

16. Defendants operate over 27 health care facilities and centers and employ approximately 3,141 individuals.

17. Defendants health care facilities and centers are listed as follows; St. Joseph's Hospital Health Center (Main Campus), Center for Wound Care and Hyperbaric Medicine, Certified Home Health Care Agency, College of Nursing, Comprehensive Psychiatric Emergency Program (CPEP), Dental Office, Dialysis Center-Camillus, Dialysis Center-Cortland, Dialysis Center-North, Dialysis Center-Northeast, Dialysis Center-Regional, Family Medicine Center, Franciscan Management Services, Inc., Health Care, Management Administrators, Inc., Kinney Drugs at Franciscan Pharmacy, Maternal Child Health Center OB/GYN Office, Maternal Child Health Center Pediatrics Office, Mental Health Services, North Surgery Center, Northeast Surgery Center, Physical Therapy-Lyncourt, Physical Therapy-Northeast, Sleep Lab-East Genesee, Sleep Lab-Northeast, Specialty Services, The Wellness Place and Westside Family Health Center.

18. Defendants constitute an integrated, comprehensive, consolidated health care delivery system, offering a wide range of services.

19. For example, defendants have a centralized laboratory with standardized instrumentation and computer systems and maintain integrated planning and budgeting processes.

20. Further, upon information and belief, defendants' labor relations and human resources are centrally organized and controlled, including defendants' employment of a director of human resources as part of the management team as well as the maintenance of system-wide policies and certain employee benefit plans.

21. Upon information and belief, defendants share common management, including oversight and management by a senior executive team and board of directors.

22. Upon information and belief, defendants have common ownership.

23. As such, defendants are the employer (single, joint or otherwise) of the plaintiffs and/or alter egos of each other.

24. Theodore M. Pasinski is the President of St. Joseph's.

25. Upon information and belief, including defendants' admissions, Theodore M. Pasinski responsibilities include actively managing St. Joseph's.

26. Upon information and belief, in concert with others, Theodore M. Pasinski has the authority to, and does, make decisions that concern the policies defendants adopt and the implementation of those policies.

27. Upon information and belief, in concert with others, Theodore M. Pasinski has the authority to, and does, make decisions that concern defendants' operations, including functions related to employment, human resources, training, payroll, and benefits.

28. Upon information and belief, due in part to his role as President, Theodore M. Pasinski is actively involved in the creation of the illegal policies complained of in this case.

29. Upon information and belief, due in part to his role as President, Theodore M. Pasinski actively advises defendants' agents on the enforcement of the illegal policies complained of in this case.

30. Upon information and belief, due in part to his role as President, Theodore M. Pasinski actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA and ERISA.

31. Upon information and belief, Theodore M. Pasinski has the authority to, and does, make decisions that concern the reviewing and counseling of defendants regarding employment decisions, including hiring and firing of Plaintiffs.

32. Upon information and belief, Theodore M. Pasinski has the authority to, and does, make decisions that concern employees' schedules, hours and standard benefit levels.

33. Upon information and belief, Theodore M. Pasinski has the authority to, and does, make decisions that concern standard pay scales.

34. Upon information and belief, Theodore M. Pasinski has the authority to, and does, make decisions that concern defendants' human resources policies, the resolution issues and disputes regarding policies and their applications, the counsel locations receive regarding human resources issues, and communications with employees about human resources issues and policies.

35. Upon information and belief, Theodore M. Pasinski has the authority to, and does, make decisions that concern defendants' employment and human resources records, including the systems for keeping and maintaining those records.

36. Upon information and belief, Theodore M. Pasinski has the authority to, and does, make decisions that concern training and education functions across St. Joseph's.

37. Upon information and belief, Theodore M. Pasinski has the authority to, and does, make decisions that concern the type and scope of training employees must attend as well as any compensation they receive for attending training.

38. Upon information and belief, Theodore M. Pasinski has the authority to, and does, make decisions that concern payroll functions across St. Joseph's.

39. Upon information and belief, Theodore M. Pasinski has the authority to, and does, make decisions that concern the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

40. Upon information and belief, Theodore M. Pasinski has the authority to, and does, make decisions that concern benefit plans across St. Joseph's.

41. Upon information and belief, Theodore M. Pasinski has the authority to, and does, make decisions that concern the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping and maintaining records related to employees' benefits.

42. Because Theodore M. Pasinski has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of Plaintiffs, and control the drafting and enforcement of the policies which govern the hiring and firing of employees, Theodore M. Pasinski has the power to hire and fire employees.

43. Because Theodore M. Pasinski has authority to establish work schedules and/or conditions of employment, provide and direct support regarding human resources issues, including work schedules and/or conditions of employment, control the drafting and

enforcement of the policies which govern employees' schedules and/or conditions of employment, establish the type and scope of training employees receive, and administer employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Theodore M. Pasinski supervises and controls employees' work schedules and/or conditions of employment.

44.     Because Theodore M. Pasinski has authority to establish employees' rate and method of payment and centrally control payroll functions, including standard pay scales, the provision of payroll information, and the timing of payment, Theodore M. Pasinski determines the rate and method of employees' payment.

45.     Because Theodore M. Pasinski has authority with respect to defendants' centralized records, including a database regarding employees' employment records, and systems for keeping and maintaining payroll, benefits, and other employment-related records, Theodore M. Pasinski maintains employees' employment records.

46.     Because Theodore M. Pasinski provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, he is affirmatively, directly, and actively involved in operations of the defendants' business functions, particularly in regards to the employment of Plaintiffs.

47.     Because Theodore M. Pasinski is actively involved in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA and ERISA, he

actively participates in the violations complained of in this action.

48. Based upon the foregoing, Theodore M. Pasinski is liable to Plaintiffs because of his active role in operating the business, his status as an employer, or according to federal and state common law.

49. Frank Panzetta is the Director of Human Resources of St. Joseph's.

50. Upon information and belief, Frank Panzetta is responsible for, provides direction and control over, and is authorized to direct all aspects of human resources functions across St. Joseph's.

51. Upon information and belief, due in part to his role of overseeing human resources, training and education, and payroll and commission services, in concert with others, Frank Panzetta is actively involved in the creation of the illegal policies complained of in this case.

52. Upon information and belief, due in part to his role of overseeing human resources, training and education, and payroll and commission services, in concert with others, Frank Panzetta actively advises defendants' agents on the enforcement of the illegal policies complained of in this case.

53. Upon information and belief, due in part to his role of overseeing human resources, training and education, and payroll and commission services, in concert with others, Frank Panzetta actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA and ERISA.

54. Upon information and belief, Frank Panzetta, is actively involved in reviewing and counseling defendants regarding employment decisions, including hiring and firing of Plaintiffs.

55. Upon information and belief, Frank Panzetta, is actively involved in decisions that set employees' schedules, hours and standard benefit levels.

56. Upon information and belief, Frank Panzetta, is actively involved in decisions that set standard pay scales.

57. Upon information and belief, Frank Panzetta, is actively involved in the determination and drafting of human resources policies, the resolution of issues and disputes regarding policies and their application, the counseling locations receive regarding human resources issues, and communications with employees about human resources issues and policies.

58. Upon information and belief, Frank Panzetta, is actively involved in defendants' employment and human resources records, including the systems for keeping and maintaining those records.

59. Upon information and belief, Frank Panzetta, is actively involved in training and education functions across St. Joseph's.

60. Upon information and belief, Frank Panzetta, is actively involved in determining the type and scope of training employees must attend as well as any compensation they receive for attending training.

61. Upon information and belief, Frank Panzetta, is actively involved in payroll functions across St. Joseph's.

62. Upon information and belief, Frank Panzetta, is actively involved in the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

63. Upon information and belief, Frank Panzetta, is actively involved in benefit plans across St. Joseph's.

64. Upon information and belief, Frank Panzetta, is actively involved in determining the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping and maintaining records related to employees' benefits.

65. Because Frank Panzetta has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of employees, and control the drafting and enforcement of the policies which govern the hiring and firing of employees, Frank Panzetta has the power to hire and fire employees.

66. Because Frank Panzetta has authority to establish work schedules and/or conditions of employment, provide and direct support regarding human resources issues, including work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, establish the type and scope of training employees receive, and administer employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Frank Panzetta supervises and controls employees' work schedules and/or conditions of employment.

67. Because Frank Panzetta has authority to establish employees' rate and method of payment and centrally control payroll functions, including standard pay scales, the provision of payroll information, and the timing of payment, Frank Panzetta determines the rate and method of employees' payment.

68. Because Frank Panzetta has authority with respect to defendants' centralized

records, including a database regarding employees' employment records, and systems for keeping and maintaining payroll, benefits, and other employment-related records, Frank Panzetta maintains employees' employment records.

69. Because Frank Panzetta provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, he is affirmatively, directly, and actively involved in operations of defendants' business functions, particularly in regards to the employment of Plaintiffs.

70. Because Frank Panzetta is actively involved in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA and ERISA, Frank Panzetta actively participates in the violations complained of in this action.

71. Based upon the foregoing, Frank Panzetta is liable to Plaintiffs because of his active role in operating the business, his role in the violations complained of in this action, his status as an employer, or otherwise according to federal and state common law.

72. Upon information and belief, defendants maintain an ERISA plan known as the St. Joseph's Hospital Health Center Employees 401k Savings and Retirement Plan and Trust.

B. **Plaintiffs**

*Named Plaintiffs*

73. At all relevant times, Robert Colozzi, Tammy Aiken and Christine Correia

were employees under the FLSA and the New York Labor Law, employed within this District and reside within this District.

*Class Members*

74. The Class Members are those employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.

75. Specifically, the Class Members are those individuals who:

    a.    were suffered or permitted to work by St. Joseph's; were subject to the St. Joseph's Break Deduction Policy that, by default, deducted non-compensable "break" time from the compensable time used to calculate the individuals' pay; performed work and were entitled to compensation during the unpaid "break period;" and did not receive their full compensation because of the Break Deduction Policy; and/or

    b.    St. Joseph's suffered or permitted to perform work before and/or after the end of their scheduled shift but were not paid for performing such work as a result of defendants' policies, practices and/or time recording system (the "Unpaid Preliminary and Postliminary Work Policy"); and/or

    c.    St. Joseph's did not include all remuneration such as shift differentials in the calculation of plaintiffs' overtime (the "Regular Rate Policy"); and/or

    d.    St. Joseph's suffered or permitted to attend compensable training but who did not receive compensation for such training (the "Unpaid Training Policy").

## FACTUAL BACKGROUND

76. St. Joseph's is one of the largest health care providers in Central New York.

77. Throughout its facilities and centers, St. Joseph's maintains the Break Deduction Policy.

78. In particular, the Break Deduction Policy is an automatic payroll policy, practice and/or system which automatically makes deductions from Class Members pay.

79. Hourly employees working at St. Joseph's facilities and centers, including its nurses, licensed practical nurses, aides and other health care workers, perform compensable work for the time that is taken from the employees' pay under the Break Deduction Policy.

80. St. Joseph's understands and requires that its employees do not sacrifice patient care in order to take their meal breaks and that they therefore perform work during their meal breaks. In fact, St. Joseph's expectations of its employees in that regard would be consistent with its employees' dedication to providing health care service, even if that means performing work during their meal breaks.

81. Further, St. Joseph's suffers or permits employees to perform work before their shifts begin or after their shifts end without compensation.

82. In addition, employees attend compensable training sessions but St. Joseph's fails to pay employees for their attendance at such training.

83. Defendants' practice is to not include all forms of remuneration such as shift differentials in the calculation of plaintiffs' overtime.

84. Even though St. Joseph's knows its employees are performing such work, St. Joseph's fails to compensate its employees for such work.

85. Defendants' practice is to be deliberately indifferent to these violations of the statutory wage and overtime requirements.

86. Through the paystubs and payroll information it provided to employees, St. Joseph's deliberately concealed from its employees that they did not receive compensation for all the work they performed and mislead them into believing they were being paid properly.

87. Further, by maintaining and propagating the illegal policies, defendants deliberately misrepresented to plaintiffs that they were being properly paid for time worked,

even though plaintiffs were not receiving pay for all time worked.

88. When questioned by employees about the Break Deduction Policy, the defendants affirmatively stated that the employees could not be paid for such time, even though defendants knew such time was compensable.

89. The defendants engaged in such conduct and made such statements to conceal from the plaintiffs their rights and to frustrate the vindication of the employees' state and federal rights.

90. As a result, employees were unaware of their claims.

91. All class members are subject to the Break Deduction Policy and are not fully compensated for work they perform during breaks.

92. Class members are also subject to the Unpaid Preliminary and Postliminary Work Policy and Regular Rate Policy and Unpaid Training Time Policy and are not fully compensated for all work performed pursuant to such policies.

93. Further, because of defendants' pay policies, defendants' improperly rounded plaintiffs' hours of work.

94. In addition, if plaintiffs' hours had been properly calculated, the time spent working through the breaks, performing work before and/or after their shifts often included work that should have been calculated at premium overtime rates.

95. This failure to pay overtime as required by the FLSA and the New York Labor Law is willful.

96. Among the relief sought, plaintiffs seek injunctive relief to prevent St. Joseph's from continuing the illegal policy and practice perpetuated pursuant to the Break Deduction Policy, the Unpaid Preliminary and Postliminary Work Policy, the Regular Rate Policy and

the Unpaid Training Time Policy.

97.     Defendants, however, at all times intended to violate applicable federal and state laws by failing to pay Class Members their regular or statutorily required rate of pay for all hours worked.

98.     Defendants also failed to make, keep and preserve adequate and accurate records of the employment of Class Members concerning their wages, hours and other conditions of employment.

99.     More specifically, the records kept by defendants failed to adequately and accurately disclose, among other things, hours worked each work day, the total hours worked each work week and/or the total overtime compensation for each work week.

100.    Defendants sponsor pension plans (the "Plans") for its employees.

101.    Defendants failed to keep accurate records of all time worked by Class Members. By failing to keep such records, defendants' records are legally insufficient to determine benefits.

102.    Defendants failed to credit or even investigate crediting overtime pay as compensation used to determine benefits to the extent overtime may be included as compensation under the Plans. Defendants, while acting as fiduciaries exercising discretion over the administration of the Plans, breached their duties to act prudently and solely in the interests of Plans' participants by failing to credit them with all of the hours of service for which they were entitled to be paid, including overtime to the extent overtime may be included as compensation under than Plans, or to investigate whether such hours should be credited. Under ERISA, crediting hours is a fiduciary function, independent of the payment of wages, necessary to determine participants participation vesting and accrual of rights.

## FIRST CAUSE OF ACTION
*FLSA*

103. Plaintiffs reallege the above paragraphs as if fully restated herein.

104. Defendant willfully violated their obligations under the FLSA and are liable to plaintiffs.

## SECOND CAUSE OF ACTION
*New York Labor Law*

105. Plaintiffs reallege the above paragraphs as if fully restated herein.

106. Defendant willfully violated their obligations under the New York Labor Law and are liable to plaintiffs.

## THIRD CAUSE OF ACTION
*ERISA—Failure to Keep Accurate Records*

1. Plaintiffs reallege the above paragraphs as if fully restated herein.

2. Class Members bring these claims under 29 U.S.C. § 1132(a)(3), which confers on plan participants the right to bring suit to enjoin any violation of ERISA § 1059(a)(1).

3. Defendants failed to keep accurate records of all time worked by Class Members. By failing to keep such records, defendants' records are legally insufficient to determine benefits Defendants failed to keep records "sufficient to determine the benefits due or which may become due" under the terms of the Plan as required by ERISA § 209(a)(1), 29 U.S.C. § 1059(a)(1).

## FOURTH CAUSE OF ACTION
*ERISA—Breach of Fiduciary Duty*

4. Plaintiffs reallege the above paragraphs as if fully restated herein.

5. Defendants breached their fiduciary duties under 29 U.S.C. § 1104(a)(1).

## FIFTH CAUSE OF ACTION
*Estoppel*

6. Plaintiffs reallege the above paragraphs as if fully restated herein.

7. Defendants are estopped from asserting statute of limitations defenses against plaintiffs.

**WHEREFORE**, plaintiffs demand judgment against defendants in their favor and that they be given the following relief:

(a) an order preliminarily and permanently restraining defendants from engaging in the aforementioned pay violations;

(b) an award of the value of plaintiffs' unpaid wages, including fringe benefits;

(c) liquidated damages under the FLSA equal to the sum of the amount of wages and overtime which were not properly paid to plaintiffs;

(d) an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating plaintiffs' rights;

(e) an award of pre- and post-judgment interest; and

(f) such other and further legal or equitable relief as this Court deems to be just and appropriate.

## JURY DEMAND

Plaintiff demands a jury to hear and decide all issues of fact.

Dated: November 13, 2008

                                      DOLIN, THOMAS & SOLOMON LLP

By: _____
      Patrick J. Solomon, Esq.
      J. Nelson Thomas, Esq.
      *Attorney for Plaintiffs*
      693 East Avenue
      Rochester, New York 14607
      Telephone: (585) 272-0540
      psolomon@theemploymentattorneys.com
      nthomas@theemploymentattorneys.com