UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ROBERT COLOZZI, TAMMY AIKEN AND CHRISTINE CORREIA, *on behalf of themselves and all other employees similarly situated,*

Plaintiffs,

-vs-

ST. JOSEPH'S HOSPITAL HEALTH CENTER, ST. JOSEPH'S HOSPITAL, THEODORE M. PASINSKI, FRANK PANZETTA, ST. JOSEPH'S HEALTH CENTER PROPERTIES INC., ST. JOSEPH'S HOSPITAL HEALTH CENTER FOUNDATION, INC., THE AUXILLARY OF ST. JOSEPH'S HOSPITAL HEALTH CENTER, INC., FRANCISCAN HEALTH SUPPORT SERVICES, LLC, FRANCISCAN HEALTH SUPPORT, INC., FRANCISCAN MANAGEMENT SERVICES, INC., FRANCISCAN ASSOCIATES, INC., ALUMNAE OF ST. JOSEPH'S HOSPITAL TRAINING SCHOOL FOR NURSES, ALUMNI ASSOCIATION ST. JOSEPH'S COLLEGE OF NURSING INC., ST. JOSEPH'S HEALTH CENTER MEDICAL OFFICE BUILDING, LLC, ST. JOSEPH'S HOSPITAL FOUNDATION-ELMIRA, N.Y. INC., HEALTH CARE MANAGEMENT ADMINISTRATORS, INC., SISTERS OF ST. FRANCIS OF THE NEUMANN COMMUNITIES AND ST. JOSEPH'S HOSPITAL HEALTH CENTER EMPLOYEES 401K SAVINGS AND RETIREMENT PLAN AND TRUST,

Defendants.

Civil Action No. 08-CV-01220 (FJS) (DEP)

MEMORANDUM OF LAW OF DEFENDANTS
ST. JOSEPH'S HOSPITAL HEALTH CENTER AND
THE AUXILIARY OF ST. JOSEPH'S HOSPITAL HEALTH CENTER, INC.
IN OPPOSITION TO PLAINTIFFS' MOTION FOR EXPEDITED NOTICE

COSTELLO, COONEY & FEARON, PLLC
Robert J. Smith (Bar Roll No. 102628)
Michael A. Tremont (Bar Roll No.102736)
Dennis P. Hennigan (Bar Roll No. 101957)
Edward G. Melvin (Bar Roll No. 509037)
Attorneys for Defendants
    St. Joseph's Hospital Health Center and
    The Auxiliary of St. Joseph's Hospital
        Health Center, Inc.
Salina Place, 205 South Salina Street
Syracuse, New York  13202-1327
Telephone:  (315) 422-1152


ROBERT J. SMITH,
    Of Counsel

## TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv, v, vi, vii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . 3

    A.    Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    St. Joseph's . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.    The Lead Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    POINT I

    PLAINTIFFS' ALLEGATIONS ARE INAPPROPRIATE FOR A COLLECTIVE
    ACTION CERTIFICATION AND THEIR MOTION FOR NOTIFICATION MUST
    BE DENIED AS A MATTER OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.    Plaintiffs Fail To Make A Factual Showing Sufficient To
           Demonstrate That They And Potential Plaintiffs Were The Victims
           Of A Common Policy Or Plan That Violated The FLSA, and Thus
           Fail To Meet Their Minimal Evidentiary Burden Under
           Section 216(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

           1.    Plaintiffs Fail to Demonstrate the Existence of a Common
                  Unlawful Policy or Practice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

           2.    Plaintiffs' Claims Are Not Suitable for Collective Action
                  Treatment Because They Fail to Show They Are Similarly
                  Situated to the Putative Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

                  a.    Plaintiffs' Affirmations Do Not Establish That the
                        St. Joseph's Employees Are Similarly Situated . . . . . . . . . . . . . 10

                  b.    The Consents Filed by Plaintiffs Do Not Establish
                        St. Joseph's Employees Are Similarly Situated . . . . . . . . . . . . . 14

**TABLE OF CONTENTS- cont.**

**Page No.**

B.    St. Joseph's Promulgated Policies And Procedures Ensure That Employees Are Paid For Work Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

C.    Adjudication Of Plaintiffs' Claims Necessarily Requires Individualized Inquiries That Are Inappropriate For Collective Action Treatment     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    1.    Plaintiffs' Meal Period Claims Require Individualized Inquiry as to Whether Each Meal Period Was Spent Predominantly for the Benefit of the Employer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    2.    Plaintiffs' Meal Period Claims Require Individualized Inquiry as to Whether Each Manager Knew That Each Proposed Class Member Performed Compensable Work During Any Given Meal Period . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

POINT II

PLAINTIFFS' PRE-NOTICE MASS SOLICITATIONS SHOULD PRECLUDE ANY ADDITIONAL NOTICE.  ALTERNATIVELY, PLAINTIFFS' PROPOSED CLASS IS OVERBROAD, AND THE FORM AND CONTENT OF ITS NOTICE IS INAPPROPRIATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

A.    The Court Should Not Authorize Additional Notice Because Of Plaintiffs' Improper Pre-Notice Mass Solicitations . . . . . . . . . . . . . . . . . . . . . . . 21

B.    The Putative Class To Which Plaintiffs Wish To Send Notice Is Overbroad . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

C.    The Content And Form Of The Proposed Notice Is Inappropriate . . . . . . . . . . . 24

    1.    The Notice Proposed By Plaintiffs Is Biased . . . . . . . . . . . . . . . . . . . . 24

    2.    U.S. Mail Is Appropriate as the Sole Form of Notice . . . . . . . . . . . . . . 24

    3.    Plaintiffs Have No Right to Employees' Personal Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## <u>TABLE OF CONTENTS- cont.</u>

<u>Page No.</u>

    4.    The Time Period for Opting into the Class Should Be Limited
to Thirty Days . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

**Page No.**

## CASES

*Abrams v. GE,*
    1996 WL 663889 (N.D.N.Y. Nov. 4, 1996) .................................. 19

*Barrus v. Dick's Sporting Goods, Inc.,*
    465 F. Supp. 2d 224 (W.D.N.Y. 2006) ...................................... 9

*Beasley v. Hillcrest Med. Ctr.,*
    78 Fed. Appx. 67 2003 WL 22317403 (10th Cir. 2003) ......................... 18

*Berger v. Cleveland Clinic Foundation,*
    2007 WL 2902907 (N.D. Ohio Sept. 29, 2007) ............................. 10, 20

*Bowens v. Atlantic Maintenance Corp.,*
    546 F. Supp. 2d 55 (E.D.N.Y. 2008) ...................................... 27

*Camper v. Home Quality Mgmt. Inc.,*
    200 F.R.D. 516 (D. Md. 2000) ........................................... 6

*Carmody v. Florida Center for Recovery, Inc.,*
    2006 WL 3666964 (S.D. Fla. Nov. 8, 2006) ................................ 10

*Cintron v. Hershey Puerto Rico, Inc.*
    363 F. Supp. 2d 10 (D. Puerto Rico 2005) .................................. 22

*D'Anna v. MIA-Corn, Inc.,*
    903 F. Supp. 889 (D. Md. 1995) .......................................... 7

*Diaz v. Electronics Boutique of Am., Inc.,*
    2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ............................... 17

*Dudley v. Texas Waste Systems, Inc.,*
    2005 WL 1140605 (W.D. Tex. May 16, 2005) ....................... 13, 15, 16, 18

*Edwards v. City of Long Beach,*
    467 F. Supp. 2d 986 (C.D. Cal. 2006) ...................................... 6

## TABLE OF AUTHORITIES- cont.

**Page No.**

*Enright v. CGH Med. Ctr.*,
    1999 WL 24683 (N.D. Ill. Jan. 12, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Flores v. Lifeway Foods, Inc.*,
    289 F. Supp. 2d 1042 (N.D. Ill. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Francis v. A&E Stores, Inc.*,
    2008 WL 2588851 (S.D.N.Y. June 26, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

*Gjurovich v. Emmanuel's Marketplace, Inc.*,
    282 F. Supp. 2d 101 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Gulf Oil Co. v. Bernard*
    452 U.S. 89 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Hall v. Burk*,
    2002 WL 413901 (N.D. Tex. Mar. 11, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Heagney v. European American Bank*,
    122 F.R.D. 125 (E.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hinojos v. Home Depot, Inc.*,
    2006 WL 3712944 (D. Nev. Dec. 1, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hoffman-La Roche, Inc. v. Sperling*,
    493 U.S. 165 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 25

*Holzapfel v. Town of Newburgh*,
    145 F.3d 516, 524 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Horne v. United Services Auto Ass'n*,
    279 F. Supp. 2d 1231 (M.D. Ala. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 23

*Humphries v. Stream Int'l, Inc.*,
    2004 U.S. Dist. LEXIS 20465 (N.D. Tex. Feb. 13, 2004) . . . . . . . . . . . . . . . . . . . . . 26

**TABLE OF AUTHORITIES- cont.**

**Page No.**

*Iriarte v. Redwood Deli & Catering, Inc.,*
  2008 WL 2622929 (E.D.N.Y. June 30, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Jackson v. New York Tel. Co.,*
  163 F.R.D. 429 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Kosakow v. New Rochelle Radiology Assocs., P.C.,*
  274 F.3d 706 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Ledbetter v. Pruitt Corp.,*
  2007 WL 496451 (M.D. Ga. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lima v. Int'l Catastrophe Solutions, Inc.*
  493 F. Supp. 2d 793 (E.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Mike v. Safeco Ins. Co.,*
  274 F. Supp. 2d 216 (D. Conn. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Pabst v. Okla. Gas. & Elec. Co.,*
  228 F.3d 1128 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Reab v. Electronic Arts, Inc.*
  214 F.R.D. 623 (D. Colo. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Reich v. Southern New Eng. Telecom. Corp.,*
  121 F.3d 58 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Roebuck v. Hudson Valley Farms, Inc.,*
  239 F. Supp. 2d 234 (N.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ruggles v. Wellpoint, Inc.,*
  2008 WL 4866053 (N.D.N.Y. Nov. 6, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 23

*Seever v. Carrols Corp.,*
  528 F. Supp. 2d 159 (W.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Sherrill v. Sutherland Global Services,*
  487 F. Supp. 2d 344 (W.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**TABLE OF AUTHORITIES- cont.**

**Page No.**

*West v. Border Foods, Inc.,*
    2006 WL 1892527 (D. Minn. June 12, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*White v. Osmose, Inc.,*
    204 F. Supp. 2d 1309 (M.D. Ala. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*White v. Washington Gas,*
    2005 WL 544733 (D. Md. Mar. 4, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Wood v. Mid-America Mgmt. Corp.,*
    192 Fed. Appx. 378 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## STATUTES AND TREATISES

29 C.F.R. § 785.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

29 U.S.C. § 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

29 U.S.C. § 216(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 16, 22

Fed. R. Civ. P. 23(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

N.Y. Gen. Bus. Law § 399-dd . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

U.S. DOL opinion letter FLSA 2007-INA (May 24, 2007) . . . . . . . . . . . . . . . . . . . . . . . . 8

Wage and Hour Division, U.S. Dept. of Labor,
    Fact Sheet No. 53, The Health Care Industry and Hours Worked (2008) . . . . . . . . . . . . 8

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted by Defendants St. Joseph's Hospital Health Center[1] and the Auxiliary of St. Joseph's Hospital Health Center, Inc., collectively referred to as "St. Joseph's," in opposition to Plaintiffs' Motion for Conditional Certification and Expedited Notice to Affected Employees ("Motion") pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA").

Plaintiffs seek conditional certification of a class consisting of all current and former hourly employees of all of the Defendants who were subject to a policy which automatically deducts time, in calculating time worked, for a meal break. Certain facts must be noted at the outset. First, both the Courts and the U.S. Department of Labor have agreed that such a policy is lawful under the FLSA. *See* Point I.A.1, *infra.* Second, while the Lead Plaintiffs would have this Court believe that during their tenure at St. Joseph's they were continually forced to work through their meal periods for no compensation, these Plaintiffs are misleading this Court. What they refuse to disclose to the Court is that each of them has been paid many times for working during meal periods; one of them alone has been paid for <u>241</u> meal periods. *See* Hellwig Declaration. ¶ 8. Lastly, none of the Plaintiffs identifies the number of unpaid meal breaks each worked, or when they did so, none ever reported these supposed worked meal breaks, and none ever asked to be paid for this time until this lawsuit. The credibility of the Plaintiffs must be seriously questioned.

Plaintiffs' Motion is fatally flawed because they cannot demonstrate that they and the collective class they purport to represent were victims of a common policy that violated the FLSA. The only evidence they proffer in support of the instant motion is so woefully deficient that it cannot

---

[1] Although Plaintiffs also named as a Defendant "St. Joseph's Hospital", there is no legal entity known as "St. Joseph's Hospital."

pass even minimal judicial scrutiny. Further, to the extent Plaintiffs rely on a number of consent forms obtained as part of their massive and scattershot and improper solicitation efforts, such consent forms contain no probative evidence as they do not even identify the particular claim for which they are seeking relief (i.e., preliminary work, postliminary work, training time, meal period work or any claim for wages or overtime), much less state they were victims of an unlawful policy.

It is well-established that an automatic meal period pay deduction policy or practice is entirely lawful and cannot legitimately form the basis for certification of a collective action. *See* pages 7 and 8, *infra*. Moreover, the very nature of the alleged meal period claims renders them ill-suited for collective action treatment because of the highly individualized analysis necessary to adjudicate such claims. Indeed, in order to assess whether work performed during a meal period was not properly compensated, the Court would need to conduct an individualized inquiry as to, inter alia, (i) the frequency, duration and nature of any such work on an employee-by-employee and day-by-day basis, (ii) the existence of timekeeping policies within each of St. Joseph's numerous departments and units; (iii) the extent to which any such policies were followed by each employee; and (iv) whether St. Joseph's management suffered or permitted any compensable work to be performed without proper compensation.

Plaintiffs offer nothing more than vague, conclusory affirmations of just RNs and LPNs, all located at the Main Hospital Campus – each affirmation identical to the next – that in no way are representative of St. Joseph's vast hourly workforce. These affirmations fail even to identify the employees' work location and job classification, let alone state that the employee making the affirmation actually was harmed by a policy that is unlawful under the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 201, et seq. Further, the affirmations fail to identify the name, location or

job classification of any other St. Joseph's employee who may have an FLSA claim. *See* affirmations attached as Exhibits "F" through "P" of Affirmation of Patrick J. Solomon, filed by Plaintiffs.

By contrast, in Opposition to Plaintiffs' Motion, St. Joseph's submits declarations attesting to the nature of St. Joseph's lawful timekeeping practices, the diverse types of work being performed by its thousands of employees, which results in different types of meal break practices, and the continual enforcement of its policies to compensate employees for any work performed during meal periods.

Thus, given the recognized legality of St. Joseph's policy, the highly individualized nature of the claims at issue, compounded by St. Joseph's decentralized operations and the heterogeneity of its workforce, as well as Plaintiffs' abject failure to demonstrate that they are similarly situated to the vast and highly disparate putative class, the instant Motion should be denied.

## **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

### **A.    Procedural History**

Plaintiffs filed a complaint on November 13, 2008, after soliciting potential plaintiffs since July, 2008, alleging various causes of action, including claims under the FLSA, New York Labor Law, and the Employee Retirement Income Security Act ("ERISA"), against eighteen Defendants, two of which do not exist as legal entities and several of which do not even have employees.[2]  On November 13, 2008, Plaintiffs also filed the instant Motion, seeking to represent a collective group of all "current and former hourly employees of defendants whose pay was subject to an automatic deduction even when the employees should have been paid for their compensable work time."

---

[2] Those Defendants without employees are filing a separate response to Plaintiffs' motion.

Plaintiffs' Memorandum of Law in Support of Motion for Expedited Notice to Affected Employees ("Plaintiffs' Memo"), p. 1. St. Joseph's respectfully submits this Memorandum in opposition to Plaintiffs' Motion.

**B.     St. Joseph's**

The major classifications of hourly employees at St. Joseph's are clerical, maintenance, professional, service employees (such as food service and housekeeping), and technical employees. Panzetta Declaration at ¶ 6. There are over 125 job titles associated with these classifications, and St. Joseph's employs approximately 3,000 hourly employees. *See id.* at ¶ 6.

It is St. Joseph's established policy to pay employees for all hours worked.  Panzetta Declaration ¶ 11. Throughout the Complaint and instant Motion, there are numerous references to St. Joseph's "Break Deduction Policy" (*See, e.g.*, Complaint ¶¶ 77-79; Plaintiffs' Memo at p. 2.); but,  in fact, no such policy as described by Plaintiffs exists. Panzetta Declaration ¶ 15. Pursuant to the actual St. Joseph's policy, all employees who work a shift greater than six hours are given a one half hour unpaid meal break.  If an employee is unable to take his or her meal break, or the break is interrupted, that employee must notify his or her supervisor who will ensure the employee is compensated for that break by cancelling the automatic meal deduction in the time and attendance software program used by St. Joseph's (known as KRONOS).  *See* Panzetta Declaration ¶ 16, 17. *See also* Declaration of Elaine Proctor ¶ 7.

## C.    The Lead Plaintiffs

The eleven lead Plaintiffs are or were hourly employees of St. Joseph's, and all of them worked as RNs or LPNs at St. Joseph's Main Hospital Campus.  *See* Panzetta Declaration ¶ 7; McInnis Declaration ¶ 2.  Each of the Plaintiffs is and was obviously well-acquainted with and well-versed in the steps employees are trained to take in order to get paid for working during their meal break, as evidenced by the number of meal breaks each has received payment for:

| Lead Plaintiffs | Number of Meal Breaks Paid For |
|---|---|
| Robert Colozzi - LPN | 2 |
| Tammy Aiken - RN | 52 |
| Christine Correia - LPN | 45 |
| Joanne Niemann - LPN | 19 |
| Kelly Kahler - RN | 83 |
| Christine Sidoran - RN | 8 |
| Therese Perrotti - LPN | 34 |
| Ann Curcio - RN | 241 |
| Judith Nuber - RN | 128 |
| John Besaw - NP | 8 |
| Jeanne Brewer-Wilton - LPN | 18 |

*See* Hellwig Declaration, ¶ 8.

These payments are admissions by the lead Plaintiffs that indeed it was, and is, the policy of St. Joseph's to pay employees who work during their meal break.  These payments also directly impeach the testimony of each Plaintiff as contained in their affirmations, where each states: "Defendants did not seem concerned about employees missing meal periods and not getting paid for that time."  *See* ¶ 10 of Plaintiffs' affirmations attached to Solomon Affirmation.

Defendants were concerned enough to pay employees in excess of <u>95,000</u> times for worked meal periods.  *See* Hellwig Declaration ¶ 7.

## ARGUMENT

## POINT I

**PLAINTIFFS' ALLEGATIONS ARE INAPPROPRIATE FOR A COLLECTIVE ACTION CERTIFICATION AND THEIR MOTION FOR NOTIFICATION MUST BE DENIED AS A MATTER OF LAW**

The FLSA does not mandate notice to potential class members in a collective action. Rather, a district court has the discretion to authorize a plaintiff to send notice to other potential plaintiffs and must exercise this discretion only in appropriate cases. *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1312 (M.D. Ala. 2002); *Camper v. Home Quality Mgmt. Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000) ("The relevant inquiry is not whether the Court has discretion to facilitate notice, but whether this is an appropriate case in which to exercise that discretion").

Though the collective action certification process does not involve rigorous analysis at this stage, it does not permit automatic approval either. Plaintiffs cannot rely on "unsupported assertions of widespread violations." *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 990 (C.D. Cal. 2006). Rather, before subjecting an employer to the burdens of a collective action, the plaintiffs must establish a "colorable basis" for their claim that a manageable class of "similarly situated" plaintiffs exists. *West v. Border Foods, Inc.*, 2006 WL 1892527 at *9, (D. Minn. June 12, 2006); *Hall v. Burk*, 2002 WL 413901 at *2 (N.D. Tex. Mar. 11, 2002) (noting that authorization of collective action notice is "by no means mandatory").

In order to satisfy this initial burden, <u>a plaintiff must show "that he or she and the proposed class members together were victims of a common policy or plan that violated the law</u> (citations omitted)." *White v. Osmose, Inc.*, 204 F. Supp. 2d at 1312 (M.D. Ala. 2002) (emphasis supplied). *See Ruggles v. Wellpoint, Inc.*, 2008 WL 4866053 *5 (N.D.N.Y. Nov. 6, 2008).

Under this standard, Plaintiffs' Motion is hardly the fait accompli that their papers suggest. Courts require a preliminary evidentiary showing that a similarly situated group of potential plaintiffs exists, and that such group has been the victim of an unlawful policy, before authorizing notice. This requirement is premised on the principles of "sound case management . . . to avoid the 'stirring up' of litigation through unwarranted solicitation, [and because] an employer should not be unduly burdened [and prejudiced] by a frivolous fishing expedition conducted by plaintiff at the employer's expense." *D'Anna v. MIA-Corn, Inc.*, 903 F. Supp. 889, 893-94 (D. Md. 1995).

Plaintiffs have failed to establish that they are similarly situated to the putative class and their Motion must be denied.

**A. Plaintiffs Fail To Make A Factual Showing Sufficient To Demonstrate That They And Potential Plaintiffs Were The Victims Of A Common Policy Or Plan That Violated The FLSA, And Thus Fail To Meet Their Minimal Evidentiary Burden Under Section 216(b)**

In focusing on what is not required at the notice stage, Plaintiffs ignore what is required — "a modest factual showing sufficient to demonstrate that [he or she] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002).

**1. Plaintiffs fail to demonstrate the existence of a common unlawful policy or practice**

In order to obtain conditional certification of a collective action under the FLSA, plaintiffs must demonstrate that the putative collective action members were together the victims of an unlawful single decision, policy or plan. *Mike v. Safeco Ins. Co.*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003) (requiring a "factual showing" that the named plaintiffs and the putative class together were victims of a common policy or plan "that violated the law"). Plaintiffs have failed to

do so.  Plaintiffs contend that "employees were subject to a common policy which automatically deducted time for meal breaks even when such employees should have been paid for their compensable work." Plaintiffs' Memo, p. 2.  Such a contention, however, wrongly presumes that the automatic deduction for meal periods is itself unlawful.

The "policy of automatically deducting a 30-minute lunch period is not violative of the FLSA on its face." *Enright v. CGH Med. Ctr.*, 1999 WL 24683 *6 (N.D. Ill. Jan. 12, 1999).  In fact, the Department of Labor ("DOL") has held that an automatic deduction for meals is lawful and in accordance with the FLSA.  *See* Wage and Hour Division, U.S. Dept. of Labor, Fact Sheet No. 53, The Health Care Industry and Hours Worked (2008) (attached to Solomon Affirmation as Exhibit "E") (bona fide meal periods of 30 minutes are not work time, employers may choose to automatically deduct the 30 minutes); *see also* U.S. DOL opinion letter FLSA 2007-INA (May 24, 2007) (proposed new practice of automatic 30 minute deduction for meal breaks acceptable and in accordance with FLSA).

The best evidence that St. Joseph's pays its employees who work during meal breaks, and that their policy is in accordance with the FLSA, is the fact that St. Joseph's, over the past five years, has compensated employees, including Plaintiffs, in excess of 95,000 times for worked meal breaks. *See* Hellwig Declaration ¶ 7.  Since payment for interrupted meal breaks is triggered by the employee's notice to his/her supervisor, this vast number of payments is also evidence of employees' knowledge of the steps they need to take in order to be paid for working during a meal break.

Without evidence of an unlawful policy, the Plaintiffs' Motion must be denied.

**2.      Plaintiffs' claims are not suitable for collective action treatment because they fail to show they are similarly situated to the putative class**

Though Plaintiffs concede that they must establish a sufficient "factual nexus" between themselves and putative members of the collective action, they have utterly failed to do so. Plaintiffs submit nothing more than vague and conclusory affirmations from employees, consisting of just RNs and LPNs who worked at the Main Hospital Campus, and <u>all of whom have been compensated for working during meal breaks</u>. Plaintiffs, nonetheless, ask the Court to make a highly suspect leap of faith that because they allegedly worked uncompensated time during other, unidentified meal periods, other unidentified employees in other, unidentified departments or units surely must also have worked uncompensated meal breaks, and, on that basis alone, Plaintiffs seek the certification of a sprawling collective action consisting of thousands of current and former non-exempt employees. Plaintiffs' allegations regarding meal time work, however, relate only to their personal circumstances. This type of speculation and conjecture does not establish Plaintiffs' burden for collective action certification. *See, e.g., Horne v. United Services Auto. Ass'n*, 279 F. Supp. 2d 1231, 1235 (M.D. Ala. 2003) (finding that "a plaintiff must demonstrate that employees outside of the work location for which the plaintiff has provided evidence were similarly affected by alleged work policies in order for the court to certify a collective action which extends beyond the plaintiff's own work location").

Each case cited by Plaintiffs in support of certification is distinguishable from the facts here. In *Barrus v. Dick's Sporting Goods, Inc.*, 465 F. Supp. 2d 224 (W.D.N.Y. 2006), the court ordered notice issued to a very narrow class consisting of non-exempt retail employees who performed essentially the same duties in the same type of work environment, regardless of the location at which

they worked, and where plaintiffs had a declaration from a manager supporting the employees' claims of FLSA violations.  By contrast, the proposed collective action here consists of thousands of employees who perform vastly different duties in highly disparate work environments across St. Joseph's vast network of departments/units.  *See* Panzetta Declaration ¶¶ 6, 7, 18.  Likewise, in *Berger v. Cleveland Clinic Foundation,* 2007 WL 2902907 at *21 (N.D. Ohio Sept. 29, 2007), the court conditionally granted certification to a much smaller (and more obviously similarly situated) collective action – all respiratory technicians and therapists employed by one hospital — as all members "worked in the same department within the same building, had the same supervisor, and their job duties overlapped significantly."  Plaintiffs' reliance on *Carmody v. Florida Center for Recovery, Inc.*, 2006 WL 3666964 (S.D. Fla. Nov. 8, 2006), also is inapposite because it involved a single-site employer that provided just one service — detox treatment for substance abusers. Although there the court certified a collective action of all hourly employees, the defendant only employed a total of forty-five hourly employees, a far cry from the thousands of employees performing various services and duties to whom Plaintiffs contend they are similarly situated in this case.

> a.     **Plaintiffs' affirmations do not establish that the St. Joseph's employees are similarly situated**

Plaintiffs' affirmations fail to create a factual nexus between Plaintiffs and other putative members of the proposed collective action. The proffered affirmations come from employees who work(ed) as RNs and LPNs in patient-care environments at just the Main Hospital Campus.  *See* Panzetta Declaration ¶ 7.  These affirmations fail to demonstrate any connection whatsoever to the other hourly St. Joseph's employees who work in different departments, under different

circumstances.  Indeed, the Plaintiffs and the supporting affiants concede that their meal periods were interrupted solely as a result of attending to patient care needs. *See* Affirmations of Lead Plaintiffs, ¶¶ 5, 8, 9.  However, many members of the proposed collective action do not perform patient care services (e.g., janitorial, security, housekeeping, food service, etc.), and those that do perform such services work in different environments, which impacts employee breaks. *See* Panzetta Declaration ¶¶ 6, 7, 18, 21.  Thus, the very basis of the claim that Plaintiffs are required to work through meal periods is inapplicable to much of the putative class.

The substance of Plaintiffs' affirmations, likewise, are deficient. Plaintiffs, all of whom have been paid for worked meal periods, misrepresent the contents of their affirmations in claiming the affirmations support claims that St. Joseph's policy was to not pay Plaintiffs, or any other specific individual, for missed or interrupted meal periods.

For example, Plaintiffs cite paragraphs 5 and 9 of their affirmations as support for the allegation that "defendants' policy and practice was not to pay employees" when their meal breaks were interrupted.  Plaintiffs' Memo, p. 6.  However, paragraphs 5 and 9 merely state:

> Even though the Hospital's payroll program automatically deducted 30 minutes each shift, it was common that I would not be receiving a 30 minute uninterrupted meal period during my shift.  The reason – as the Hospital knew and expected – was that it was of paramount importance that the employees take care of the patients' needs. Having uninterrupted meal breaks was understandably a secondary concern.

Affirmation of Lead Plaintiffs, ¶ 5.

> "Based on my observation during the course of my job duties, I observed that the defendants and management expected and knew that the employees continued to work through some or all of their lunches to take care of patients, particularly given the increasing short staffing.  They saw the work being done and their meal periods being interrupted."

Affirmation of Lead Plaintiffs, ¶ 9.

Nowhere in these paragraphs do the Plaintiffs state that it was St. Joseph's policy not to pay for worked meal breaks.  At best, these statements merely establish that employees worked during meal breaks, which, of course, does not equate to an FLSA violation.

Plaintiffs' Memorandum of Law also cites paragraphs 5, 7 and 10 of their affirmations as support for these assertions:

> "Employees also universally testified that Defendants' policy was not to compensate employees when their meal breaks were interrupted."

> "Additionally, employees have testified that the policies equally applied to all hourly employees."

> "Plaintiffs have also provided sufficient evidence that the break deduction policy was observed throughout Defendants' organization."

Plaintiffs' Memo, p. 14.

A reading of paragraph 5 of Plaintiffs' affirmations, set forth above, and paragraphs 7 and 10, set forth below, quickly reveals that the affirmations provide no support for such broad, conclusory assertions made by Plaintiffs.

> Because my job required that I be available to respond to all emergencies in the hospital I observed that other employees throughout the hospital, like myself, rarely were able to take a full uninterrupted 30 minute meal period and often continued about their duties.   Because St. Joseph's was so chronically under staffed, based on my observations, it was an everyday occurrence that lunches were interrupted by work for some employees and the employee did not receive a full, uninterrupted 30 minute meal breaks.

Affirmation of Lead Plaintiffs, ¶ 7.

> Although they knew of the work being done their larger concern was with staying within their budget, including labor costs, even though St. Joseph's was understaffed.  Defendants did not seem concerned about employees missing meal periods and not getting paid for that time.

Affirmation of Lead Plaintiffs, ¶ 10.

Significantly, not one employee testified in his or her affirmation that it was Defendant's policy not to compensate employees when their meal breaks were interrupted or that they, as individuals, were not paid for missed or interrupted meal breaks. Of course, none of the Plaintiffs could testify to that since all of them have received compensation for interrupted meal breaks! *See* Hellwig Declaration, ¶ 8.

Plaintiffs also failed to show that any other employees were not paid for such time. While the affiants state "I observed that other employees, like myself, rarely were able to take a full uninterrupted thirty (30) minute meal period" (Plaintiffs' Affirmations, ¶ 7), the Court should simply not accept as fact that Plaintiffs somehow have actual knowledge of the payroll practices of other managers in other departments, or in other units. Significantly, almost identical affirmation language – rarely were able to take a full uninterrupted 30 minute meal period – has been deemed insufficient evidence to demonstrate plaintiffs were similarly situated for purpose of a collective action in *Dudley v. Texas Waste Systems, Inc.*, 2005 WL 1140605 *2 (W.D. Tex. May 16, 2005).

It strains credulity that a RN or LPN working in the critical care unit has "observed" whether an accounts payable clerk, or a lab processor, or a security guard, performed work during a meal period, much less whether these employees were compensated for this work. Moreover, even if they "observed" another employee missing a break, that does not establish an FLSA violation. Working during a meal period does not equate to an FLSA violation.

b.      **The consents filed by Plaintiffs do not establish St. Joseph's employees are similarly situated**

The consent forms executed by putative class members provide no "evidentiary" support for Plaintiffs' motion. As discussed above, while the Plaintiffs' affirmations contain allegations relating to meal period claims alone, the consent forms are unclear as to which claims they relate, if any at all. Moreover, Plaintiffs' reliance on the forms is misplaced because the consent forms, on their face, are so utterly vague and ambiguous that they lack any probative value on the issue of whether these other employees at St. Joseph's are similarly situated to the Plaintiffs. Indeed, the consent forms merely state that the individual is an employee or former employee of St. Joseph's and that they consent to participate in an FLSA suit. *See* Panzetta Declaration, ¶ 23, Exhibit "A." Significantly, the consent forms do not state what type of claim these individuals may be asserting against St. Joseph's, what position these individuals held, whether they were subject to any unlawful policy that deprived them of wages due, or any evidence that would lead the Court to find that they are similarly situated to the lead Plaintiffs. In fact, the consent forms simply state that the employee is "seeking payment of unpaid wages, including overtime wages, and related relief." *Id.* The consent forms fail to identify any unlawful policy or practice which could form the basis for an FLSA action.

Plaintiffs fail to produce the required evidence (as opposed to unsupported allegations) to establish that they are "similarly situated" to members of the putative class. Plaintiffs offer only cookie-cutter affirmations consisting of nothing more than supposition, and vague, ambiguous, boilerplate unauthorized consent forms in support of their claims. Such "evidence" fails to demonstrate the existence of the requisite "factual nexus" between Plaintiffs and other similarly situated individuals. *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104

-14-

(S.D.N.Y. 2003).  Consequently, Plaintiffs have failed to meet their statutory burden of proof and their Motion must be denied as a matter of law.

**B.      St. Joseph's Promulgated Policies And Procedures Ensure That Employees Are Paid For Work Time**

Plaintiffs refuse to disclose to the Court the St. Joseph's policy, of which they have been beneficiaries, which expressly directs and trains employees to report any missed meal breaks or interrupted meal breaks, who are then paid for <u>their entire meal break</u>.  *See* Panzetta Declaration, ¶¶ 11, 12; Proctor Declaration ¶¶ 4, 5.  Such a policy has been upheld as lawful, and collective certification denied, where plaintiffs' claims were based on such a policy.  In *Dudley v. Texas Waste Systems, Inc.*, 2005 WL 1140605 (W.D. Tex. May 16, 2005), like here, the plaintiff sought approval to proceed as a collective action alleging that his employer automatically deducted from the employees' time records time for lunch breaks.  The employer responded by showing that its policy, which it communicated to all employees in writing, was for employees to take a 30-minute lunch break. *Id.*  The employer also presented evidence that employees were advised if they worked through lunch, they were to inform management so they may be compensated for such time. *Id.*  The plaintiffs, like Plaintiffs here, failed to offer any evidence to refute these facts and, consequently, the court denied plaintiffs' request to proceed as a collective action. *Id.*

Unlike Plaintiffs, St. Joseph's has factual, evidentiary support demonstrating the actual, lawful meal break procedure at St. Joseph's.  During new employee orientation, employees are instructed and trained on how the KRONOS time and attendance system works.  Proctor Declaration ¶¶ 4, 5.  All employees are instructed to take a half hour unpaid meal break and, if they are unable to do so due to a work-related reason, they are required to contact their supervisor.  Proctor

-15-

Declaration, ¶ 5.  The supervisor then cancels the automatic meal deduction, in order to pay employees for their missed and/or interrupted meal breaks.  Proctor Declaration ¶ 6.

That St. Joseph's policy works is demonstrated by the more than <u>95,000</u> interrupted meal breaks for which employees, <u>including the Plaintiffs</u>, have been compensated over the past five years. *See* Hellwig Declaration, ¶¶ 7, 8.

As in *Dudley*, the Plaintiffs here cannot refute St. Joseph's evidence.  Plaintiffs' affirmations do not contradict St. Joseph's statements.  Rather, St. Joseph's declarations simply fill in the blanks left by Plaintiffs' "omissions."

**C.   Adjudication Of Plaintiffs' Claims Necessarily Requires Individualized Inquiries That Are Inappropriate For Collective Action Treatment**

The fact that Plaintiffs have alleged that St. Joseph's lawful policies and procedures were improperly applied to them necessarily involves an individualized inquiry.  It does not demonstrate the existence of an illegal system-wide policy with regard to missed or interrupted meals, particularly in light of the evidence presented by St. Joseph's. The existence of employees with different job responsibilities, who work in different locations, and, most likely, in different working conditions is fatal to the similarly situated requirement in the context of uncompensated meal claims "because each claim will need to be established with an individualized analysis of the specific minimum wage and overtime compensation violations that may have occurred." *Ledbetter v. Pruitt Corp.*, 2007 WL 496451 *5 (M.D. Ga. 2007). "Such an individualized analysis runs directly counter to 'the economy of scale' envisioned by collective treatment of similarly situated employees under § 216(b) of the FLSA." *Id.*  Courts have denied conditional certification where, as here, plaintiffs claim that they performed off-the-clock work, on the grounds that resolution of such claims

-16-

necessarily requires individualized inquiry and analysis.  *See, e.g., Diaz v. Electronics Boutique of Am., Inc.*, 2005 WL 2654270 *5 (W.D.N.Y. Oct. 17, 2005) (denying certification because allegations of off-the-clock work "are too individualized to warrant collective action treatment"); *Hinojos v. Home Depot, Inc.*, 2006 WL 3712944 *3 (D. Nev. Dec. 1, 2006) (denying certification of off-the-clock claims as it was "clear that resolution of plaintiffs' claims depends on the specific employment conditions in each store and department in which each class member worked and would likely require testimony from individual supervisors and other employees about the circumstances allegedly giving rise to the claimed violations").

Similarly, this case necessarily will require an individualized inquiry into two crucial substantive issues: (1) whether each meal period was legally compensable, i.e., spent predominantly for the benefit of the employer; and (2) whether each supervisor had knowledge that this work was being performed.   Therefore, this case is not suitable for collective certification.

### 1.  Plaintiffs' meal period claims require individualized inquiry as to whether each meal period was spent predominantly for the benefit of the employer

Plaintiffs' Memorandum of Law and their supporting, cookie-cutter affirmations repeatedly refer to the inability of Plaintiffs to take a "30 minute uninterrupted meal period." Plaintiffs' Memo of Law, p. 4; Colozzi Affirmation,  ¶ 5.  Receipt of a 30 minute uninterrupted meal period is not, however, the standard employed by the Second Circuit in order to determine the compensability of an unpaid meal period under the FLSA.  Rather, the Second Circuit has held that a meal break is compensable only where "a worker performs activities predominantly for the benefit of the employer." *Reich v. Southern New Eng. Telecom. Corp.*, 121 F.3d 58, 64 (2d Cir. 1997) (citations omitted).  The determination of "whether an employee's time is spent 'predominately for the benefit

-17-

of the employer' is "highly individualized and fact-based." *Beasley v. Hillcrest Med. Ctr.*, 78 Fed. Appx. 67, 70 2003 WL 22317403 at *2 (10th Cir. 2003) (*citing Pabst v. Okla. Gas. & Elec. Co.*, 228 F.3d 1128, 1132 (10th Cir. 2000)).

In *Dudley*, discussed above, the defendants submitted affidavits of management stating that plaintiffs were advised that if they worked through their meal period, they were to inform management so that they could be compensated for this time. The court denied certification, noting that:

> [a]ny analysis of lunch breaks will result in . . . hearing individual testimony regarding whether [employees] regularly took lunch breaks . . . the dates each [employee] actually worked through lunch . . . [and] whether any [employee] advised management that they worked through their break and required compensation.

*Dudley*, 2005 WL 1140605 at *2.

The only claims upon which Plaintiffs seek certification in this motion – that certain of their meal periods should be compensable – likewise require individualized inquiry, as they involve employees who work in over 125 different job titles, who perform vastly different types of work, work in different departments, report to different supervisors (who may or may not observe all of their employees during meal periods), and who report missed or interrupted meals in different ways, depending on their department and/or supervisor.

The analysis of whether these various employees performed work during a meal period that was predominantly for the benefit of the employer will be as unique as the nature and demands of the work they perform. However, Plaintiffs, all of whom provide(d) patient-care services at one location, seek to represent a collective action consisting of all employees subject to the automatic meal deduction, a class which includes many employees who have never provided patient-care

services, and would thus not be subject to interruptions during meal periods of the same type, frequency, length or duration. These employees include positions ranging from switchboard operator to billing clerk to food service workers, who all have vastly different job duties and work environments. *See* Panzetta Declaration ¶ 6.

Plaintiffs erroneously rely on a number of cases for the proposition that the similarly situated standard "is not defeated simply because, as here, the plaintiffs performed a variety of jobs in a number of departments in different locations." Plaintiffs' Memo of Law, p. 11 (citations omitted). Plaintiffs fail to mention that all of these cases involved discrimination claims under the Age Discrimination in Employment Act ("ADEA") and in contexts where the putative collective action was subject to an alleged uniform discriminatory policy or decision. For instance, in *Heagney v. European American Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988), the policy at issue was a system-wide voluntary retirement program that allegedly coerced older workers to retire. That defendant applied the program at different locations to different types of employees was irrelevant to the similarly situated analysis because all putative plaintiffs received the same incentives to retire under the program. *See also Abrams v. GE,* 1996 WL 663889 at *2 (N.D.N.Y. Nov. 4, 1996) (retention procedures had discriminatory impact on employees over 40); and *Jackson v. New York Tel. Co.*, 163 F.R.D. 429, 432 (S.D.N.Y. 1995). By contrast, here, the claims for missed or interrupted meal periods are entirely dependent on each employee's specific job duties and working conditions that may cause interruptions in the first place.

2.      **Plaintiffs' meal period claims require individualized inquiry as to whether each manager knew that each proposed class member performed compensable work during any given meal period**

A determination of whether St. Joseph's "suffered or permitted" employees to work "off the clock" will necessarily require an individualized analysis. Specifically, this analysis will require a determination of whether "the employer 'knows or has reason to believe that [the employee] is continuing to work.'" *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 718 (2d Cir. 2001) (quoting 29 C.F.R. § 785.11). "[A]n employer cannot suffer or permit an employee to perform services about which the employer knows nothing." *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998). Courts have not hesitated to dismiss FLSA claims where a plaintiff has failed to record time for which he knows he could have been compensated. For example, in *Berger v. Cleveland Clinic Foundation*, 2007 WL 2902907 (N.D. Ohio Sept. 29, 2007), the plaintiff claimed that he was not compensated for working through meal periods which were unpaid due to an automatic deduction. The court granted the defendant-hospital's motion for summary judgment, as it was "undisputed that Defendant maintained a logbook in which employees were told to mark when they missed," and the failure to pay was "due to Plaintiff's own failure to mark them in the logbook." *Id. at \*13; see also Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 170 (W.D.N.Y. 2007) (dismissing employees' off-the-clock claims based in part upon the "undisputed fact that plaintiffs never reported this work on their timesheets"); *Wood v. Mid-America Mgmt. Corp.*, 192 Fed. Appx. 378, 381 (6th Cir. 2006) (dismissing employee's off-the-clock claims where plaintiff "did report some overtime. . .[the employer] had no reason to suspect that he neglected to report other overtime hours" and noting that "the employee bears some responsibility for the proper implementation of the FLSA's overtime provisions"); and *White v. Washington Gas*, 2005 WL 544733 at \*5 (D. Md. Mar. 4, 2005)

-20-

(dismissing plaintiff's claims for time worked during unpaid meal breaks where the employee "never reported those hours on his timesheets, nor did he ever ask to be paid for those hours until this lawsuit").

In the present case, the Plaintiffs allege that "Defendants and their management knew and expected that the employees continued to work through some or all of their meal breaks to take care of patients" and that "Defendants saw the work being done and employees' meal breaks being interrupted." Plaintiffs' Memo, pp. 4, 5; Colozzi Affirmation ¶ 9. Putting aside the lack of an allegation that such work went uncompensated, Plaintiffs broadly impute this knowledge to St. Joseph's in an incredibly vague fashion in a failed attempt to satisfy the similarly situated requirement. Plaintiffs ignore the fact that whether St. Joseph's had knowledge depends on an individualized inquiry of whether each employee's manager knew that a particular employee performed work on a particular day during their meal period and whether such work was predominantly for the benefit of the employer to render it compensable.

## POINT II

### PLAINTIFFS' PRE-NOTICE MASS SOLICITATIONS SHOULD PRECLUDE ANY ADDITIONAL NOTICE.  ALTERNATIVELY, PLAINTIFFS' PROPOSED CLASS IS OVERBROAD, AND THE FORM AND CONTENT OF ITS NOTICE IS INAPPROPRIATE

**A.     The Court Should Not Authorize Additional Notice Because of Plaintiffs' Improper Pre-Notice Mass Solicitations**

Notwithstanding Plaintiffs' request for court-authorized notice, Plaintiffs have been engaging in improper self-help mass solicitations to potential plaintiffs since July 2008 – five months prior to filing the instant action in mid-November, 2008; specifically, Plaintiffs' counsel distributed solicitation cards to employees and posted a website devoted to soliciting plaintiffs

(www.hospitalovertime.com).  *See* Panzetta Declaration,  ¶ 24 Exhibits "B" and "C."  The website contains a link to a "frequently asked questions" page, and an opt-in consent form which has not been approved, reviewed or even submitted to this Court, as contemplated by Section 216(b) of the FLSA.  *See id.*  These mass solicitations are at odds with Plaintiffs' Motion for Court Authorized Notice and are nothing but an attempt to circumvent the established procedure for court-supervised notice.  *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169-72 (1989) (court is to monitor preparation and distribution of notice); *Cintron v. Hershey Puerto Rico, Inc.*, 363 F. Supp. 2d 10, 17 (D. Puerto Rico 2005): ("[T]he trial court must first authorize whether the alleged class should be provided with notice").  In *Hoffman-La Roche*, the Supreme Court warned of the inherent dangers in promulgating notice without the court's approval and the potential consequences for doing so:

> By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative.  Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed.  This procedure may avoid the need to cancel consents obtained in an improper manner.

493 U.S. at 172.  Plaintiffs' solicitations, which appear to be directed to <u>all</u> health care workers, regardless of their specific job and even employer, is the exact abuse Congress and the Supreme Court sought to prevent.  This Court has both the duty and the broad authority to exercise control over a class action given the potential for abuse in such cases.  *See Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981).  Pre-certification notice of the pendency of this litigation on this mass scale has prejudiced St. Joseph's through the scattershot solicitation of its employees with imbalanced and inaccurate information and any further notice would confuse employees through the distribution of multiple and contradictory notices.

Plaintiffs will not be prejudiced by this Court's refusal to authorize further notice as Plaintiffs' mass solicitations have already resulted in a significant number of consents, without even identifying the employee's particular claim. *See Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1047 (N.D. Ill. 2003) (failure to authorize court approved notice in no way hampers plaintiffs' representation of opt-in plaintiffs). Because Plaintiffs have engaged in such self-help prior to any Court involvement and approval of notice, Plaintiffs should be precluded from taking advantage of the Court's processes to facilitate further notice.

**B.      The Putative Class To Which Plaintiffs Wish To Send Notice Is Overbroad**

While St. Joseph's maintains that notice simply is inappropriate in this case, if the Court does not deny notice, such notice must be distributed on a limited basis. In authorizing notice to be sent, courts have routinely denied the broad notice as requested by Plaintiffs here in favor of more limited, focused notice. The court rejected a similar class in *Sherrill v. Sutherland Global Services*, 487 F. Supp. 2d 344 (W.D.N.Y. 2007), where the plaintiffs proposed a collective action of all hourly employees at all of the defendant's locations. The court limited the collective action to telemarketing agents, as the plaintiffs only submitted affidavits from employees who held this job title. *See also Horne v. United Svcs. Auto. Ass'n*, 279 F. Supp. 2d 1231, 1235 (M.D. Ala. 2003) (denying notice and holding that a plaintiff "must demonstrate that employees outside of the work location for which the plaintiff has provided evidence were similarly affected by alleged work policies in order for the court to certify a collective action which extends beyond the plaintiffs' own work location"); *Ruggles v. Wellpoint, Inc.*, 2008 WL 4866053 (N.D.N.Y. 2008) (notice to be confined to the job categories of the named plaintiffs).

Similarly here, Plaintiffs have not presented any evidence to suggest that any of the Hospital's employees outside of the affiants' job classifications (RNs and LPNs) performed work during their meal periods, as the consents do not specify what type of claim the opt-in Plaintiffs are pursuing.

If the Court finds that any notice is warranted, such notice should be limited to employees in the same job titles, departments, and locations as the affiants.  Namely, notice only should be issued to RNs and LPNs in the departments/units where the Plaintiffs work(ed) at the Main Hospital Campus.

### C.    The Content And Form Of The Proposed Notice Is Inappropriate

#### 1.    The Notice proposed by Plaintiffs is biased

Plaintiffs' proposed Notice (attached to the Solomon Affirmation as Exhibit "A") is a biased, one-sided Notice that does not present potential class members with an untainted description of the litigation and their options, and the consequences of those options.

St. Joseph's has made the necessary changes to Plaintiffs' Notice, and this revised Notice does provide potential class members with the information needed to make their decision, in an unbiased way. This revised Notice is attached to the supporting Declaration of Dennis P. Hennigan, as Exhibit "A".

#### 2.    U.S. Mail is appropriate as the sole form of notice

Plaintiffs' request for an order requiring St. Joseph's to e-mail class notices and opt-in forms to employees is excessive and goes far beyond the well-established requirements for providing potential class members with "the best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2).  It is well-established that first-class mail is an adequate means, and indeed the preferred

-24-

method, of providing potential class members with "accurate and timely notice concerning the pendency of the collective action." *Hoffmann-La Roche*, 493 U.S. at 170. In *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623 (D. Colo. 2002), the court addressed the plaintiffs' request to notify potential class members by electronic mail and by a posting on a website, in addition to distribution by first-class mail. The court held that the electronic means of notification were unnecessary and potentially problematic:

> In contrast [to first class mail], electronic communication inherently has the potential to be copied and forwarded to other people via the internet with commentary that could distort the notice approved by the Court. Electronic mail heightens the risk that the communication will be reproduced to large numbers of people who could compromise the integrity of the notice process. In addition, email messages could be forwarded to nonclass members and posted to internet sites with great ease. First class mail ensures, at the outset, that the appropriately targeted audience receives the intended notification and maximizes the integrity of the notice process.

*Id.* at 630-31.

Here, Plaintiffs' request that St. Joseph's be required to distribute class notices and opt-in forms by email is unnecessary, redundant and creates the potential for misinformation to be distributed to potential class members. Plaintiffs have not presented any reasoning why first-class mail — the well-accepted standard for providing the "best" notice to class members — is insufficient. St. Joseph's should be required to distribute class notices and opt-in forms by mail only.

Plaintiffs further request that St. Joseph's be required to publicize the notice in employer communications to employees and to post the notices in a conspicuous place is similarly redundant and unnecessary. Again, it is well-established that first-class mail, alone, is sufficient to provide class members with the best notice practicable of the lawsuit. Additional means of notification are superfluous.

-25-

### 3.    Plaintiffs have no right to employees' personal information

Plaintiffs have requested significant personal and highly sensitive information about St. Joseph's employees without providing any justification whatsoever as to why such information is needed.  Specifically, Plaintiffs have requested the employee's name, current or last known address, phone number, social security number, location of employment, dates of employment, date of birth and e-mail address.  This information goes well beyond the well-established obligation of a defendant to provide plaintiffs with <u>names</u> and <u>last known addresses</u> only.

Courts have routinely denied requests for personal information such as social security numbers and telephone numbers, citing privacy concerns of the individual potential class members. *See, e.g., Humphries v. Stream Int'l, Inc.*, 2004 U.S. Dist. LEXIS 20465 *12 (N.D. Tex. Feb. 13, 2004) (rejecting plaintiffs' counsel's argument that telephone numbers, dates of birth and social security numbers of potential class members were required, because "[a]ny need for the compelled disclosure of such data is outweighed by the privacy interests of these current and former workers. . .And there is no apparent reason to conclude that sending a letter to the person's last known address will be inadequate"); *see also Francis v. A&E Stores, Inc.*, 2008 WL 2588851 *3 (S.D.N.Y. June 26, 2008) (court limiting discovery to names and addresses rather than plaintiffs' request for social security numbers, telephone numbers, and dates and location of employment); N.Y. Gen. Bus. Law § 399-dd (confidentiality of social security account number).

Given that Plaintiffs fail to demonstrate any  reason for needing this highly sensitive information about St. Joseph's employees, and in light of the privacy concerns of potential class members, St. Joseph's should be required to produce only the names and last known addresses of its employees.

-26-

4.        **The time period for opting into the class should be limited to thirty days**

Plaintiffs' proposed notice does not contemplate any finite opt-in period, but instead leaves potential class members with an open-ended opportunity to opt in to the class. This is patently unreasonable. Indeed, in *Bowens v. Atlantic Maintenance Corp.*, 546 F. Supp. 2d 55, 85 (E.D.N.Y. 2008), the court held that, in the absence of a finite opt-in period in the plaintiff's proposed class notice, a period of sixty days was appropriate. Courts routinely approve sixty day opt-in periods. *See, e.g., Iriarte v. Redwood Deli & Catering, Inc.*, 2008 WL 2622929 at *3 (E.D.N.Y. June 30, 2008); *Francis v. A&E Stores, Inc.*, 2008 WL 2588851 at *5; *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 804 (E.D.N.Y. 2007) (recognizing opt-in periods of the range from thirty to ninety days, and using ninety day opt-in period due to migratory nature of plaintiffs and plaintiffs' significant language barriers).

Unlike in *Lima*, where the court used a ninety day opt-in period, there is no allegation here that potential class members are located anywhere but in the Syracuse area or would be difficult to locate or possess any significant language barriers. In this case, if a conditional class is certified, given the extent of Plaintiffs' pre-certification mass solicitations, a thirty day opt-in period is appropriate. Not only have Plaintiffs utterly failed to articulate a reason why an extended opt-in period would be necessary, they have not even addressed, or cited any case law to support, their lack of limitation of any sort on the opt-in period. Indeed, there are no extenuating circumstances — much less any that Plaintiffs have brought to light — necessitating a lengthened or indefinite opt-in period. This is especially true in light of the fact that Plaintiffs have already reached out to the potential class, starting several months ago.

## CONCLUSION

Plaintiffs have failed to offer any evidence of an unlawful policy of St. Joseph's that was implemented system-wide, fail to offer evidence that they are similarly situated with the proposed class, and conveniently ignore the fact that each of the Plaintiffs, and many other employees, have been compensated thousands of times for missed meal breaks.  Since Plaintiffs fail to provide sufficient evidence, their Motion must be denied as a matter of law.

**DATED:**      **December 29, 2008**

COSTELLO, COONEY & FEARON, PLLC
Robert J. Smith (Bar Roll No. 102628)
Michael A. Tremont (Bar Roll No.102736)
Dennis P. Hennigan (Bar Roll No. 101957)
Edward G. Melvin (Bar Roll No. 509037)
Attorneys for Defendants
  St. Joseph's Hospital Health Center and
  The Auxiliary of St. Joseph's Hospital
        Health Center, Inc.
Salina Place, 205 South Salina Street
Syracuse, New York  13202-1327
Telephone:  (315) 422-1152

**ROBERT J. SMITH,**
    **Of Counsel**