UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ROBERT COLOZZI; TAMMY AIKEN; and
CHRISTINE CORREIA; on behalf of themselves
and all other employees similarly situated,

                              Plaintiffs,

        -v -                                           5:08-CV-1220

ST. JOSEPH'S HOSPITAL HEALTH CENTER;
ST. JOSEPH'S HOSPITAL; THEODORE M.
PASINSKI; FRANK PANZETTA; ST. JOSEPH'S
HEALTH CENTER PROPERTIES INC.; ST.
JOSEPH'S HOSPITAL HEALTH CENTER
FOUNDATION, INC.; AUXILIARY OF ST. JOSEPH'S
HEALTH CENTER, INC.; ALUMNAE OF
ST. JOSEPH'S HOSPITAL TRAINING SCHOOL FOR
NURSES; ALUMNI ASSOCIATION ST. JOSEPH'S
COLLEGE OF NURSING INC.; ST. JOSEPH'S HEALTH
CENTER MEDICAL OFFICE BUILDING, LLC; ST.
JOSEPH'S HOSPITAL FOUNDATION-ELMIRA, N.Y.
INC.; and ST. JOSEPH'S HOSPITAL HEALTH CENTER
EMPLOYEES 401K SAVINGS AND RETIREMENT
PLAN AND TRUST
                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

THOMAS & SOLOMON LLP                  J. NELSON THOMAS, ESQ.
Attorneys for Plaintiffs              PATRICK J. SOLOMON, ESQ.
693 East Avenue                       CRISTINA A. BAHR, ESQ.
Rochester, New York 14607             GUY ANTHONY TALIA, ESQ.
                                      JUSTIN M. CORDELLO, ESQ.
                                      MICHAEL J. LINGLE, ESQ.
                                      PETER J. GLENNON, ESQ.
                                      SARA E. ROOK, ESQ.


COSTELLO, COONEY & FEARON, PLLC       ROBERT J. SMITH, ESQ.
Attorneys for Defendants              DENNIS P. HENNIGAN, ESQ.
205 South Salina Street               EDWARD G. MELVIN, ESQ.
4th Floor                             MICHAEL A. TREMONT, ESQ.
Syracuse, New York 13202              NICOLE MARLOW-JONES, ESQ.

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

Named plaintiffs Robert Colozzi ("Colozzi"), Tammy Aiken ("Aiken"), and Christine Correia ("Correia") (collectively "plaintiffs") brought this action on behalf of themselves and other similarly situated employees against 19 named defendants including St. Joseph's Hospital and various other inter-related entities[1] and individuals ("defendants" or "St. Joseph's") alleging violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201-219 (2006) ("FLSA"), the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 (2006) ("ERISA"), and New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190-191 (McKinney 2002).

Defendants move for partial summary judgment dismissing four opt-in plaintiffs pursuant to Federal Rule of Civil Procedure 56. Plaintiffs oppose and move to certify the NYLL and ERISA claims as a class action pursuant to Federal Rule of Civil Procedure 23. Defendants oppose. Both motions were considered on their submissions without oral argument.

## II. BACKGROUND

The parties are presumed to be familiar with the facts underlying plaintiffs' claims in light of the number of written opinions already issued. Nevertheless, a brief recitation of the procedural history is helpful for identifying the legal issues relevant to the present motions.

---

[1] Many defendants have since been dismissed.

Plaintiffs are each current or former employees of defendants. Plaintiff Colozzi was employed as a Licensed Practical Nurse from July 5, 2005, through May 20, 2007. Plaintiff Aiken was employed by St. Joseph's in several positions, including as a Registered Nurse, from May 16, 1983, through March 14, 2008. Plaintiff Correia began her employment with defendants on August 7, 1989, and remains employed by them today as a Licensed Practical Nurse. They commenced this action alleging they and other similarly situated employees were required to work through meal breaks, before and after scheduled shifts, and in excess of forty hours per week, without compensation. Specifically, they challenge four of defendants' policies. First, defendants automatically deduct 30 minutes each day from an employee's pay for a meal period using the Kronos computerized system even though employees often miss their meal period due to patient care demands. Second, defendants round hourly employees' start and stop times in a consistent manner at both the beginning and end of their shifts.[2] See Panzetta Decl., Ex. D, Dkt. No. 254-11. Third, plaintiffs allege defendants routinely allow and often require employees to work prior to clocking in and after clocking out. Fourth, plaintiffs claim that defendants fail to include all remuneration in the regular rate of pay for purposes of calculating the overtime pay of those employees subject to premium pay for shift differentials.

On January 26, 2009, plaintiffs obtained conditional certification of a collective action under the FLSA pursuant to section 216(b). Magistrate Judge David E. Peebles preliminarily certified the following class:

---

[2] Because plaintiffs have withdrawn their request for class certification of the rounding claims, there is no need to discuss defendants' rounding policy in detail.

> All present and former hourly employees of the St. Joseph's Hospital Health Center, including but not limited to registered nurses, licensed practical nurses, nurse practitioners, and certified nurses' assistants, with direct patient care responsibilities who have been subject to automatic meal break deductions through use of the Kronos system, and who have or may have worked through or during unpaid meal breaks without compensation at any time during the past three years.

See Jan. 26, 2009, Decision & Order, Dkt. No. 101, 28.  Following the conditional certification, notice was mailed to the 2,241 current and former direct patient care employees eligible to join the FLSA collective action.  The parties also engaged in limited discovery related to plaintiffs' instant motion for class certification.  Since that time the parties have litigated the eligibility of certain opt-in plaintiffs.  The parties stipulated to the dismissal of some ineligible plaintiffs while others were excluded as the result of motions to dismiss made by defendants.  At the time of the instant motions, 72 eligible current or former employees have opted-in to the FLSA collective action.[3]

## III.  DISCUSSION

### A.  Defendants' Motion for Partial Summary Judgment

Defendants move for partial summary judgment dismissing four opt-in plaintiffs ("disputed plaintiffs") from this action.[4]  The three remaining disputed plaintiffs are: Mary

---

[3] Defendants note that 72 opt-in plaintiffs remain and reference their then-pending motion to dismiss 13 opt-in plaintiffs who did not respond to the court-approved interrogatories.  See Smith Decl., Dkt. No. 254-1, ¶ 17.  Defendants' motion to dismiss those 13 plaintiffs has since been granted, presumably leaving 59 opt-in plaintiffs.  As discussed below, another four plaintiffs are the subject of defendants' motion for partial summary judgment.

[4] One disputed plaintiff, Cynthia Wernet, has since been dismissed from this action pursuant to an Order granting in part and denying in part defendants' motion for partial summary judgment.  See Mar. 26, 2010, Memorandum-Decision & Order, Dkt. No. 225.

- 4 -

Ellen Hare, Shirleen Bennett, and Shari Schwartz.[5]   Disputed plaintiffs opted-in to this

collective action pursuant to a Notice and Consent Form.  By Order dated November 23,

2009, Magistrate Judge Peebles permitted defendants to direct interrogatories to each opt-in

plaintiff to determine what claims they were asserting.  The interrogatory at issue posed the

following question: "Do you claim to have worked through or during a meal break without

compensation during your employment at the Hospital since October 30, 2002?"  The

disputed plaintiffs each answered "no" to the interrogatory.  These three opt-in plaintiffs also

answered "no" when asked by interrogatory whether they were asserting pre/post shift work

claims, improperly calculated overtime claims, or improper rounding claims.

        Defendants contend the three plaintiffs at issue do not qualify under the FLSA

certification order because they admitted they did not work through or during a meal break

without compensation.  Further, they admit to having no claims to the other alleged FLSA

violations.  Plaintiffs argue they are entitled to discovery before dismissal because the

alleged violations are technical in nature and depend on documentary evidence yet to be

uncovered, particularly with respect to the rounding and regular rate claims.  They further

maintain that defendants have not proven they are entitled to judgment as a matter of law

against the disputed plaintiffs on all claims in the complaint.  The parties also dispute the

binding nature of interrogatory responses and the effect that opting-in to the FLSA collective

action has on participating in the remaining claims in this action.

---

        [5]  In response to defendants' statement of material facts, plaintiffs' counsel indicated that disputed
plaintiffs Shirleen Bennett and Shari Schwartz would be filing voluntary opt-out notices.  As of the date of
this motion, no such notice has been received and thus Shirleen Bennett and Shari Schwartz are still
plaintiffs in this lawsuit.

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56.  The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact.  Id.  Then the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Id.

The Second Circuit has not ruled on the issue of whether interrogatory responses are binding judicial admissions but several district courts have determined they are.  See, e.g., Med. Educ. Dev. Servs., Inc. v. Reed Elsevier Group, PLC, No. 05 Civ. 8665, 2008 WL 4449412, at *11 (S.D.N.Y. Sept. 30, 2008) ("[I]n this Circuit, contention interrogatories are treated as judicial admissions 'that generally stop the answering party from later seeking to assert positions omitted from, or otherwise at variance with, those responses.'") (quoting Wechsler v. Hunt Health Sys., Ltd., No. 94 Civ. 8294, 1999 WL 672902, at * 2 (S.D.N.Y. Aug. 27, 1999)); see also Zeigler v. Marriott Int'l, Inc., No. 03 Civ. 7688, 2005 WL 1022431, at *11 (S.D.N.Y. May 2, 2005) (plaintiff's complaint and interrogatory responses "constitute admissions and limit his potential claims"); Guadagno v. Wallack Ader Levithan Assocs., 950 F.Supp. 1258, 1261 (S.D.N.Y. 1997) (observing that interrogatory responses are generally treated as judicial admissions, and that "[a] judicial admission is conclusive, unless a court allows it to be withdrawn"), aff'd 125 F.3d 844 (2d Cir. 1997) (unpublished table decision).

This issue was recently addressed in the Western District of New York.  See Grace v. U.S., --- F.Supp.2d ---, No. 08-CV-6006, 2010 WL 4451818, at *11 (W.D.N.Y. Nov. 4, 2010).  In Grace, the United States attempted to bar a plaintiff from pursuing a claim based on his original interrogatory response.  Id.  The court reviewed the Advisory Committee's

notes to Federal Rule of Civil Procedure 33 governing interrogatories.   The notes indicated that interrogatories generally do not limit proof, however in cases where reliance on an answer may cause prejudice, a court may find the answer binding.  The <u>Grace</u> Court determined that the plaintiff was not bound by his original interrogatory answer because his response was conditional,[6] he amended his response two months later, and the United States learned about his more expansive theory of liability during a deposition one month after the interrogatory response.  Based on these facts the court determined the United States was not prejudiced.

 <u>Grace</u> is distinguishable from the instant matter.  Here, plaintiffs allege defendants violated the FLSA and the NYLL by implementing four different policies.  Defendants served disputed plaintiffs with interrogatories to determine which policy each opt-in plaintiff is proceeding under.  This is the type of general information that defendants need to adequately defend themselves and must rely on such information to craft motions and a defense strategy.  Defendants would be prejudiced if responding opt-in plaintiffs were permitted to change their responses as the case proceeds.  It should also be noted that both parties relied on responding plaintiffs' interrogatories in dismissing many opt-in plaintiffs who did not meet the class definition because of their dates of employment, job duties, or pay category.

 The class was certified as direct patient care workers "who have or may have worked through or during unpaid meal breaks without compensation at any time during the past three years."  Based on the disputed plaintiffs' answers, under penalty of perjury, none

---

[6] He stated "*[a]t present time*, the only natural person plaintiff knows . . . ."

asserted that they have or may have worked during a meal break without pay and therefore they fall outside the conditionally certified class and must be dismissed. <u>See</u> Mar. 26, 2010, Memorandum-Decision & Order, Dkt. No. 225, 3-4 (dismissing plaintiffs who necessarily fall outside conditionally certified class because they did not work for defendants within the past three years as required by putative class definition).

Plaintiffs' argument that the disputed plaintiffs cannot be dismissed because they may allege violations other than the meal break claim is also without merit. First, these plaintiffs have not claimed any other violations. Second, even if they had, this issue has already been litigated. <u>See</u> May 27, 2009, Memorandum-Decision & Order, Dkt. No. 140. Individuals who opt-in to the FLSA collective action do not just opt-in as to a claim, but instead opt-in to the action in its entirety and may seek damages for all claims asserted in the complaint, not just the meal break claim. <u>Id</u>. at 8. This determination eliminates the need for an opt-in plaintiff to opt-in again at a later date should additional claims be added. <u>Id</u>. at 9. This remains one lawsuit and plaintiffs may assert violations of all, none, or a combination of defendants' alleged unlawful policies.

However, an opt-in plaintiff to the FLSA collective action must still meet the requirements to <u>opt-in</u>. While an opt-in plaintiff to the FLSA collective action becomes a part of the lawsuit in its entirety and may assert additional claims, the opposite is not necessarily true. Simply stated, one is who ineligible to opt-in to the FLSA collective action may nevertheless still be eligible to be a part of the lawsuit. Indeed, there may be an infinite number of individuals who were not eligible to opt-in under the Notice and Consent Form because they did not have direct patient care responsibilities. Some of those same individuals however may be able to proceed in a class action if such classes are not limited

to employees with direct patient care responsibilities.  Likewise, the preliminarily certified FLSA class is limited to people employed within the last three years, based on the applicable FLSA three year statute of limitations, while a class action could potentially include people employed within the previous six years, based on the NYLL's six year statute of limitations.

Plaintiffs also contend that summary judgment is inappropriate pursuant to Rule 56(f) because facts essential to justify plaintiffs' opposition are yet to be obtained.  In support of this argument plaintiffs' counsel filed an affirmation indicating that discovery is needed as to other violations, including whether any automatic meal break deductions were cancelled in the absence of a request by plaintiffs, whether all requested cancellations were made, and whether pay was impermissibly rounded.  Whether plaintiffs worked during a meal break without pay is well-within their knowledge and not something to be determined by conducting discovery.  Additionally, as stated above, these plaintiffs also disclaimed other possible FLSA violations.

Accordingly, defendants' motion for partial summary judgment will be granted and the following opt-in plaintiffs will be dismissed from the conditionally certified FLSA collective action: Mary Ellen Hare, Shirleen Bennett, and Shari Schwartz.

### B. **Plaintiffs' Motion for Class Certification**

Plaintiffs move pursuant to Federal Rule of Civil Procedure 23 for class certification of the NYLL and ERISA claims and the appointment of Thomas & Solomon LLP as class counsel.  Plaintiffs' proposed class includes all current and former hourly employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.  They propose four subclasses.

### 1.  Legal Standard

The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of the Rule 23 requirements have been met. Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010); Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202-03 (2d Cir. 2008).  Rule 23 should be given "liberal rather than restrictive construction" and courts should "adopt a standard of flexibility."  Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997) (quoting Sharif ex rel. Salahuddin v. N.Y. State Educ. Dep't, 127 F.R.D. 84, 87 (S.D.N.Y. 1989)).  Trial courts are given substantial discretion in determining whether to grant class certification.  See e.g., Sumitomo Copper Litig.v. Credit Lyonnais Rouse, Ltd., 262 F.3d 134, 139 (2d Cir. 2001). Doubts about whether Rule 23 has been satisfied should be resolved in favor of certification. Barrus v. Dick's Sporting Goods, Inc., --- F.Supp.2d ----, No. 05-CV-6253, 2010 WL 3075730, at *3 (W.D.N.Y. Aug. 5, 2010); Pyke v. Cuomo, 209 F.R.D. 33, 40 (N.D.N.Y. 2002) (McCurn, J.).  In addition, "where a collective action under the FLSA that is based on the same set of facts has been approved, there is an inclination to grant class certification of state labor law claims."  See Shabazz v. Morgan Funding Corp., 269 F.R.D. 245, 249 (S.D.N.Y. 2010) (quoting Lee v. ABC Carpet & Home, 236 F.R.D. 193, 202-03 (S.D.N.Y. 2006)).

To be certified, a putative class must first meet all four prerequisites set forth in Rule 23(a), referred to as numerosity, commonality, typicality, and adequacy.  See Teamsters Local 445, 546 F.3d at 201-02.  After overcoming that hurdle, the class must fit into one of the three Rule 23(b) subdivisions.  Each proposed subclass must independently meet the requirements of Rule 23.  See Warren v. Xerox Corp., No. 01-CV-2909, 2004 WL

1562884, at *17 (E.D.N.Y. Jan. 26, 2004); Burka v. N.Y.C. Transit Auth., 110 F.R.D. 595, 601 (S.D.N.Y. 1986).

    **2.  Proposed Subclasses**

    Subclass I includes all current and formerly hourly employees of defendants from November 13, 2002, to present whose pay was subject to an automatic 30 minute deduction even when the employees were not afforded a bona fide meal period of at least 30 minutes and who were therefore not paid for all compensable work time (the "Meal Break Deduction Class").  The violations that form the basis for this subclass are based on NYLL sections 190 and 191, which incorporate FLSA standards for determining whether time worked is compensable time.  Subclass II is comprised of all current and former hourly employees of defendants from November 13, 2002, to present who were suffered or permitted to perform work before or after their scheduled shift but were not paid for such work.  These violations are the result of defendants' rounding policy and alleged practice of permitting work before punching in and after punching out (the "Pre and Postliminary Work Class").  Subclass II is also based on violations of NYLL.  Subclass III includes all current and formerly hourly employees of defendants from November 13, 2002, to present subject to shift differential premium payments (the "Regular Rate Class") and is based on NYLL which incorporates FLSA standards for determining whether an employee's overtime rate has been calculated upon the proper regular rate of pay.

    Subclass IV is unique in that its existence rests in part on the survival of any of the above subclasses.  This subclass is made up of all current and former hourly employees covered by defendants' 401(k) retirement plan who were not properly credited for all hours worked and consequently suffered a reduction in retirement benefits (the "ERISA Class").

Subclass IV violations are premised on the fiduciary standards set out by ERISA.  To the extent that the class certification requirements are met for any of the above subclasses, the requirements will then be examined with respect to Subclass IV.

After consideration of defendants' opposition and newly presented evidence, plaintiffs withdraw the certification motion as to claims involving impermissible rounding (part of Subclass II) and regular rate-shift differential claims (Subclass III).  Thus, only Subclasses I, II (relating to work before and after shifts), and IV need be discussed.

Under Rule 23(c), a court may divide a class into subclasses when all members of the class challenge the same conduct by a defendant but assert varying specific interests and legal theories.  See Fed. R. Civ. P. 23(c)(4)-(5); Warren, 2004 WL 1562884, at *17. Here, subclasses are appropriate because all members of the proposed class challenge defendants' policies as violative of the FLSA, NYLL, and ERISA, but the claims are based on four distinct alleged policies and not all proposed class members assert claims in each subclass.

### 3. **Rule 23(a) Requirements**

The Rule 23(a) prerequisites to a class action are: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  Additionally, while it is not explicitly spelled out in Rule 23, courts have added an "implied requirement of ascertainability" with respect to the class definition.  In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 30 (2d Cir. 2006).

### a. **Numerosity**

The first requirement that plaintiffs must prove under Rule 23(a) is that the prospective class is so numerous that joinder is "impracticable."  Fed. R. Civ. P. 23(a)(1). "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations."  Gen. Tel. Co. of the Nw., Inc. v. Equal Emp't Opportunity Comm'n, 446 U.S. 318, 330, 100 S. Ct. 1698, 1706 (1980).  In the Second Circuit "numerosity is presumed at a level of 40 members."  Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).

Defendants currently employ approximately 2,360 hourly employees who are all subject to the automatic meal break deduction policy.  Despite the application of the policy to this large group, defendants argue the low number of FLSA opt-in plaintiffs weighs against a finding that joinder is impracticable.  See Thiebes v. Wal-Mart Stores, Inc., No. CIV. 98-802-KI, 2002 WL 479840, at *3 (D. Or. Jan. 9, 2002) (finding that small percentage of opt-in plaintiffs to FLSA collective action cautions against a finding that joinder is impracticable where only 2.7% of potential class members opted-in).  Courts in the Second Circuit have rejected Thiebes and continue to assess numerosity based on the number of proposed class members rather than the number of opt-ins.  See Niemiec v. Ann Bendick Realty, No. 1:04-cv-00897, 2007 WL 5157027, at *6 (E.D.N.Y. Apr. 23, 2008) ("Thiebes is inapposite as there are other cases within this circuit supporting a finding of numerosity despite a low number of opt-in plaintiffs when certain mitigating factors are present."); see also Shabazz, 269 F.R.D. at 249 (finding numerosity based on 355 identified potential class members despite only 79 of that same group opting-in to FLSA collective action); Noble v. 93 Univ. Place Corp., 224 F.R.D. 330, 342 (S.D.N.Y. 2004) (finding same with several hundred

potential class members and only three opt-ins because of employees' fear of reprisal in joining FLSA collective action); <u>Scott v. Aetna Servs., Inc.</u>, 210 F.R.D. 261, 267 (D. Conn. 2002) (finding same with 281 potential class members and only 22 opt-ins).  Numerosity for <u>Subclass I</u> is easily established based on the approximately 2,360 hourly employees subject to the challenged policy.

With respect to <u>Subclass II</u>, plaintiffs contend that based on the 2,360 hourly employees and the testimonial evidence concerning off the clock work, it is reasonable to infer that this subclass would be comprised of more than 40 employees.  Plaintiffs submit affidavits of three employees who claim they regularly performed work before and after their scheduled shift and were not paid for such work.  Solomon Decl., Ex. BB ("Colozzi Aff."), Ex. CC ("Coons Aff."), Ex. DD ("Dukat-Wilson Aff."), Dkt. No. 234-6.  Plaintiffs also attach the interrogatory responses of 21 opt-in plaintiffs who each state that they have worked before or after a shift without pay.  Solomon Decl., Ex. EE, Dkt. No. 234-7.  Plaintiffs have not met her burden of establishing numerosity for <u>Subclass II</u> based solely on three affidavits and 21 interrogatory responses.  There is no uniform policy here applied to all 2,360 hourly employees like that applicable to <u>Subclass I</u> and plaintiffs cannot draw any reasonable inference from such sparse evidence.  Because plaintiffs cannot show that <u>Subclass II</u> is sufficiently numerous to warrant class certification, the remaining Rule 23 requirements need not be examined and plaintiffs' motion for certification of <u>Subclass II</u> will be denied.

### b. <u>Commonality and Typicality</u>

The second and third requirements, commonality and typicality, tend to merge and are generally examined together.  Commonality requires a showing that the prospective class members share common questions of law or fact.  Fed. R. Civ. P. 23(a)(2).  "It is not

necessary that all of the questions raised by arguments are identical; it is sufficient if a single common issue is shared by the class." Weiss v. La Suisse, Societe D 'Assurances Sur La Vie, 226 F.R.D. 446, 449 (S.D.N.Y. 2005) (citing Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 155 (2d Cir. 2001)).  Put another way, "Rule 23(a)(2) does not require the plaintiffs to demonstrate that the class members' claims are identical; rather, it demands that the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiffs' claim as to that of the other members." Weber v. Align Tech., Inc., No. 5:07-CV-0535, 2010 WL 2265418, at *4 (N.D.N.Y. June 2, 2010) (Suddaby, J.) (quoting Dodge v. Cnty. of Orange, 208 F.R.D. 79, 88 (S.D.N.Y. 2002)) (internal quotations omitted).

Typicality requires that claims or defenses of the representative parties are typical of those of the prospective class.  Fed. R. Civ. P. 23(a)(3).  Typicality is satisfied "if the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." Marisol A. v. Giuliani, 929 F.Supp. 662, 691 (S.D.N.Y.1996), aff'd, 126 F.3d 372 (2d Cir. 1997).  The claims of the named plaintiffs however do not need to be identical with those of each class member. Marriott v. Cnty. of Montgomery, 227 F.R.D. 159, 172 (N.D.N.Y. 2005) (Hurd, J.).

Plaintiffs contend commonality and typicality are met because the claims of all proposed class members derive from the same policies and are based on the same legal theories.  Defendants first argue that because the proposed class would include over 93 different job titles, covering 195 different departments, and multiple facilities, the named plaintiffs' claims are not common with or typical of the proposed class.  With respect to Subclass I, they maintain that because there is no common unlawful meal break policy – automatic meal break deductions are not alone a violation of the FLSA and defendants'

actual policy is to pay employees for missed meal breaks – that plaintiffs cannot satisfy commonality and typicality.

First, that the proposed class includes a variety of job titles is irrelevant in terms of typicality and commonality.  <u>Scholtisek v. Eldre Corp.</u>, 229 F.R.D. 381, 390 (W.D.N.Y. 2005) ("That these employees may have had different duties and performed different types of work is not particularly relevant to whether they are similarly situated with respect to [the named] plaintiff's claims.  What <u>is</u> important is that these employees were allegedly subject to a common practice or scheme . . . in violation of the FLSA.").  For <u>Subclass I</u> it is undisputed that all hourly employees are subject to the automatic meal break deduction.  It is not the policy alone that plaintiffs claim is unlawful but instead the manner in which it is implemented.  This gives rise to the common legal questions of whether the policy for voiding the automatic deduction and the alleged failure to ensure that breaks were taken constitute violations of the NYLL.  Accepting as true plaintiffs' allegation that defendants employ a company-wide automatic deduction policy yet delegate to department supervisors the task of overseeing the cancellations raises the common question of whether this delegation is in compliance with the law.  The named plaintiffs' claims are typical of this subclass because named plaintiffs are hourly employees subjected to the automatic meal break deduction policy but who often worked during their meal breaks and were not compensated for them.  Plaintiffs have established commonality and typicality for <u>Subclass I</u>.

### c. **Adequacy**

The final requirement under Rule 23(a) is for the representative parties to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  A court must determine whether the named plaintiffs' interests are antagonistic to the interests of other

members of the class and whether counsel for the prospective class is qualified, experienced, and generally able to conduct the litigation.  Brown v. Kelly, 609 F.3d 467, 479 (2d Cir. 2010); Hilton v. Wright, 235 F.R.D. 40, 52 (N.D.N.Y. 2006) (Hurd, J.).  Plaintiffs maintain there are no other pending actions alleging the same or similar causes of actions against these defendants and the class members' claims are similar so no conflict of interest will arise.  They also provide evidence of proposed counsel's qualifications.  Defendants dispute the named plaintiffs' adequacy based on their "cookie cutter affidavits" and take issue with counsel's failure to produce plaintiffs for scheduled depositions.

The affidavits of the named plaintiffs exhibit sufficient knowledge concerning the class claims and no class members have interests antagonistic to one another.  All proposed members of the class share a common interest in establishing that defendants violated NYLL.  The attorneys seeking to represent the class have established they are qualified and able to conduct this litigation.  Their experience is more fully discussed below pursuant to Rule 23(g).  Based on the minute entry of the discovery conference held on March 23, 2010, before Magistrate Judge Peebles, scheduled depositions were cancelled and all depositions were put on hold until paper discovery is completed and pending the instant motion for certification.  Accordingly, plaintiffs have demonstrated that they can adequately represent the interests of the proposed class.

### d. Ascertainability

Although Rule 23(a) does not expressly require that a class be definite in order to be certified, Second Circuit courts have implied a requirement that a class be identifiable before it may be properly certified.  See, e.g., Dunnigan v. Metro. Life Ins. Co., 214 F.R.D. 125, 135 (S.D.N.Y. 2003).  Class members do not actually need to be ascertained before

certification, but a court must determine that the class will be ascertainable at some stage of the proceedings. Noble, 224 F.R.D. at 338. Ascertainability is usually found where membership in the class can be identified by "reference to objective criteria." Spagnola v. Chubb Corp., 264 F.R.D. 76, 97 (S.D.N.Y. 2010).

Defendants argue the proposed class definition is fatally overbroad because it would include over 4,000 current and former employees, including those who were specifically invited to join the FLSA collective action pursuant to the mailed Notice and Consent Form but chose not to join. They claim that the class would include employees who do not have meal break claims, and is therefore so fatally overbroad that there is no "aggrieved class" of people that could present a case on generalized proof. See Sheehan v. Purolator, Inc., 103 F.R.D. 641, 648 (E.D.N.Y. 1984) (denying class certification because plaintiff failed to establish proof of an aggrieved class). Defendants also argue the class definition is defective because class members are not readily identifiable. They contend that each of the approximately 4,000 putative class members would need to be asked whether they worked through a meal break, and if so, whether they were paid. Defendants maintain this is not administratively feasibly and would require liability determinations.

In support of this argument, defendants cite De La Cruz v. Gill Corn Farms, Inc., No. 03-CV-1133, 2005 WL 5419056, at *6-7 (N.D.N.Y. Jan. 25, 2005) (McAvoy, J.). In De La Cruz, the plaintiffs were employed by defendants as corn packers and claimed they worked in excess of forty hours per week but were not paid overtime wages at a rate of one and one half times their regular rate. On plaintiffs' class certification motion, the court noted that resolution of the overtime issue turned on whether the work performed by plaintiffs fell within the FLSA's overtime exemption for farming. The proposed class included employees "who

did not work in agriculture or secondary agriculture as defined by the FLSA." Id. at *1.  The court took issue with this definition because whether the workers, who regularly packed corn, were engaged in agriculture or secondary agriculture within the meaning of the FLSA was a legal determination and made the class definition unworkable.  The court noted that the proposed definition "begs the very legal question at issue in this case" because the definition depended on a legal determination that had not yet been made.  Id. at *6.  Until such a legal determination could be made, the court concluded it would be impossible to manage that subclass.  Plaintiffs' revised class definition however, which included "all employees of Defendants who packed produce at Gill Corn Farms, Inc. between September 15, 1997 and September 15, 2003" was "more workable because it is fact-based."  Id.  The De La Cruz Court later went on to deny class certification on other grounds.

De La Cruz is distinguishable in that the class definition proposed by plaintiffs here does not beg a legal determination.  Subclass I is comprised of all current and formerly hourly employees of defendants from November 13, 2002, to present whose pay was subject to an automatic 30 minute deduction even when the employees were not afforded a bona fide meal period of at least 30 minutes and who were therefore not paid for all compensable work time.  The legal determination lies in whether defendants' automatic deduction policy and the manner in which it is implemented is in compliance with NYLL and the FLSA. Whether a proposed class member fits into the class is a factual question.  The proposed class definition calls for factual inquiries as to whether an individual hourly employee worked through a meal period without pay.  Any problem presented by such factual inquiries is more appropriately addressed when analyzing whether common questions predominate over individual questions under Rule 23(b)(3).

Defendants also cite <u>Alix v. Wal-Mart Stores, Inc.</u>, where plaintiffs, current and former employees of Wal-Mart, moved for class certification under New York Civil Practice Law and Rules ("CPLR") 901.  838 N.Y.S.2d 885, 889 (N.Y. Sup. Ct. Albany Cnty. 2007) <u>aff'd</u> 57 A.D.3d 1044 (N.Y. App. Div. 3d Dep't 2008).  The proposed class was defined as "hourly employees . . . in the State of New York at any time on or after August 9, 1995 . . . whether employed in Wal-Mart stores, SuperCenters, or Sam's Club stores" and included approximately 200,000 members.  The court found that such a definition was improper because it did not limit class participation to those employees who were actually aggrieved. After posing a potentially narrower class definition of only those having viable claims, the court found the class was still unascertainable because a case-by-case analysis would be necessary to determine whether an individual satisfied the requirements for membership.  At the outset, <u>Alix</u> is distinguishable from the instant matter because the court considered certification under CPLR 901, as opposed to Rule 23.  The <u>Alix</u> Court also focused on the large class size of approximately 200,000 employees and the specific number of improper pay calculations to determine that "the dilution of the pool of aggrieved potential litigants as a result of the overly broad class proposed by plaintiffs would result in minuscule individual awards of damages to class members."  <u>Id.</u> at 890.  Those concerns have not been raised by the parties here and in any event, a New York State Supreme Court decision denying class certification under an entirely different standard is not determinative of the instant motion.

Plaintiffs have met the prerequisites of Rule 23(a) for <u>Subclass I</u>.  Consideration of the requirements of Rules 23(b)(3), 23(b)(2) and 23(b)(1) will be determinative of the motion.

### 4.  **Rule 23(b) Requirements**

In addition to showing that the proposed class satisfies the four prerequisites of Rule 23(a), plaintiffs must show that the class is "maintainable" under Rule 23(b).  A class satisfies this requirement if it fits into one of the three alternative categories delineated by Rule 23(b).  Plaintiffs argue class certification is proper under any of the Rule 23(b) subdivisions.

### a.  **Rule 23(b)(3)**

Under Rule 23(b)(3), class certification is appropriate where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and the court finds that class litigation "is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Plaintiffs maintain certification is proper under Rule 23(b)(3) because the common question of whether defendants employ policies permitting hourly employees to work without compensation applies to all members of the class.  They contend the answer to that question determines liability and can be established through generalized common proof showing defendants did not sufficiently ensure that employees were being paid for time worked during meal breaks.  They further argue that any individualized inquiries relate to damages, not liability, and resolution of those issues are manageable.  Defendants insist individualized questions of fact predominate over common issues because individualized inquiries would need to be made into whether each plaintiff worked through a meal break without pay to determine whether they belong in the class.  They argue that the various practices from unit to unit must be examined to determine whether an employee is absolutely required to advise their supervisor that they worked through a meal break or whether the managers in the

department independently cancel deductions without being asked to do so by their employees.

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Myers, 624 F.3d at 547 (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623, 117 S. Ct. 2231, 2249  (1997)). Predominance is required to "ensure[ ] that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Myers, 624 F.3d at 547 (quoting Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 104 (2d Cir. 2007) (alteration omitted)).  Common questions predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002).

To determine whether a class action is the superior method of resolving the claims at issue, a court must consider Rule 23(b)(3)'s four factors.  Those factors are: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).  Manageability "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 164, 94 S. Ct. 2140, 2146 (1974).

Plaintiffs have made a sufficient showing that legal and factual questions relating to each class member's case in Subclass I can be achieved through class wide proof.  Factual questions regarding whether hourly employees worked through meal breaks without compensation may possibly be answered with the testimony of a representative sample of employees.  See e.g., Grochowski v. Phoenix Constr., 318 F.3d 80, 88 (2d Cir. 2003) ("[N]ot all employees need testify in order to prove FLSA violations or recoup back-wages.").  The legal question common to the entire class is whether defendants' automatic meal break deduction policy is in compliance with the law.  This includes, inter alia, whether defendants knew that employees performed work during their meal periods and if they did not know, whether they should have known; whether defendants prevented employees from performing work they did not want to pay for; whether they ensured meal breaks were actually taken; whether if the break was not taken, records were updated to reflect time worked; whether the policy requiring employees submit a form to cancel the automatic deduction impermissibly shifts the burden to record time from the employer to the employee; and whether employees were properly trained regarding the cancellation policy.

Further, class members should not be denied class certification because defendants' practices vary from unit to unit.  That defendants have no uniform policy for cancelling the automatic deduction may present plaintiffs with evidentiary challenges down the road, but St. Joseph's inconsistent methods ranging from filling out a pink sheet in the time book in Labor and Delivery to signing a sheet in the "tele-time" book in the Orthopedic/Neurosurgery Unit to signing the Kronos time sheet on the bulletin board in the Medical/Surgical/Telemetry Unit should not bar plaintiffs from certifying a class based on the common question of whether the automatic deduction combined with supervisors' alleged

knowledge of time worked and patient care demands is unlawful.  Likewise, the fact that

some supervisors discourage employees from requesting cancellation of the automatic

deduction while other supervisors do not, may present plaintiffs with unique challenges

during a trial.  However plaintiffs will not be punished during the class certification phase

because of defendants' inconsistent practices.

   Additionally, individual class members have little need to control the prosecution of

their claims separately.  The costs of maintaining separate actions would be prohibitive for

potential class members and obtaining individual counsel may be difficult because of the

relatively low individual damages.  Neither party has advised of any pending litigation

concerning the subject matter of the proposed class action.  This forum is desirable for the

parties as both of defendants' facilities, and most, if not all, of the proposed class members

reside in the Northern District of New York.

   Defendants contend a class action is not manageable because of the factual

differences presented by individual plaintiffs claiming differing amounts in damages.  They

argue that a class action would result in hundreds of mini-trials because each class member

must present individualized proof regarding when they worked through a meal break without

compensation.  This argument is unpersuasive.  Considering the numbers alone, it is evident

that a class action is superior to the adjudication of dozens, or hundreds, of separate actions.

Admittedly, whether a particular class member worked through a meal period without

compensation may be subject to individualized proof.  Plaintiffs argue resolution of whether a

class member worked through a meal break without compensation may be achieved by

representative testimony.  Whether that is permissible need not be decided at this point.

Issues of individual damages arise in any class action based on unpaid wages and

individualized inquiries will need to be made in the FLSA collective action which has already been conditionally certified.  See e.g., Shabazz, 269 F.R.D. at 250-51.  The existence of individualized claims for damages, alone, is not a barrier to class certification on grounds of manageability.  Many of the remaining manageability arguments pertain to the hybrid nature of this lawsuit because it involves both FLSA and NYLL claims, and would simultaneously utilize both opt-in and opt-out procedures.[7]  These arguments are addressed in more detail below in the context of supplemental jurisdiction.

After considering all the relevant factors, plaintiffs have met their burden of demonstrating that common questions predominate over individual issues and a class action is the superior method of resolving the claims.  The state law claims clearly arise out of the same nucleus of operative facts as the FLSA claims, which are going to be adjudicated in this court in any event.  Therefore plaintiffs' motion for class certification of Subclass I will be granted pursuant to Rule 23(b)(3).

**b.  Rule 23(b)(2)**

Alternatively, plaintiffs argue that the classes may be certified under Rule 23(b)(2). This division permits class certification if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).  A class will be certified if "broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury."  Robinson, 267 F.3d at 162.

---

[7] Defendants cite De La Cruz to argue that overlap of a FLSA collective action and a Rule 23 class action based on NYLL claims is unmanageable.  2005 WL 5419056, at *6-7. The De La Cruz Court discussed the difficulty in managing such a suit under Rule 23(b)(3)(D).

Legal opinions, law review articles, and other publications have discussed the extent to which, if at all, money damages may be sought in a Rule 23(b)(2) class action. Id. at 163 n.8. Prior to the Second Circuit's decision in Robinson, many district courts only permitted certification of Rule 23(b)(2) class actions seeking money damages where the request for monetary relief was incidental to the requested injunctive relief. Id. at 163; see also Robinson v. Metro-North Commuter R.R. Co., 197 F.R.D. 85, 87-88 (S.D.N.Y. 2000) ("Robinson II") ("[T]he inherently individualized nature of the determination of damages . . . render[s] it predominant, and thereby make[s] class action status under Rule 23(b)(2) inappropriate, except in those rare incidences in which the request for monetary relief [is] wholly 'incidental' to the requested injunctive relief.") vacated, Robinson, 267 F.3d 147. On appeal from Robinson II, the Second Circuit in Robinson noted that "limiting (b)(2) certification to claims involving no more than incidental damages . . . forecloses (b)(2) class certification of all claims that include compensatory damages . . . even if the class-wide injunctive relief is the 'form of relief in which the plaintiffs are primarily interested.'" Robinson, 267 F.3d at 163. The Second Circuit rejected the lower court's bright-line rule and held that when determining certification of a claim seeking both injunctive relief and non-incidental monetary damages, a district court

> should, at a minimum, satisfy itself of the following: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits. Insignificant or sham requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery.

Id. at 164; see also Parker v. Time Warner Entm't Co., 331 F.3d 13, 20 (2d Cir. 2003).

Plaintiffs contend the primary goal of this lawsuit is to restrain defendants' unlawful conduct and that they would bring the suit to enjoin defendants even in the absence of monetary recovery.  This argument is unpersuasive.  Plaintiffs have not presented evidence that they would do so were it not possible to recover the claimed lost wages and, for the ERISA subclass, credit for all hours worked.  Plaintiffs may be suing to end defendants' allegedly unlawful practices but the compensation they seek can hardly be coined as incidental.  While liability might be determined on a class wide basis, the issue of damages would most certainly "vary based on the subjective considerations of each class members' claims."  Robinson, 267 F.3d at 165.  As previously discussed in the Rule 23(b)(3) analysis, individualized inquiries would likely need to be conducted regarding whether each employee worked through a meal break or before or after a shift without compensation to determine damages.  These damages are in contrast to incidental damages which "flow[ ] directly from a finding of liability on the . . . claims for class-wide injunctive and declaratory relief."  Id. Even though certification of a class involving non-incidental monetary claims may be permitted under Rule 23(b)(2), the facts here do not warrant it for Subclass I.

### c. **Rule 23(b)(1)**

Finally, plaintiffs contend that certification is also proper under Rule 23(b)(1).  Rule 23(b)(1)(A) authorizes a class action if "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."  Fed. R. Civ. P. 23(b)(1)(A).  Alternatively, Rule 23(b)(1)(B) permits class certification where

> prosecuting separate actions by or against individual class members
> would create a risk of . . . adjudications with respect to individual class
> members, that, as a practical matter, would be dispositive of the interests
> of the other members not parties to the individual adjudications or would
> substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1)(B). Certification under the second prong of Rule 23(b)(1) often

occurs when the putative class members' only source of recovery comes from a limited fund.

See e.g., Ortiz v. Fibreboard Corp., 527 U.S. 815, 834-38, 119 S. Ct. 2295, 2309 (1999).

　　　　The parties do not distinguish between Rule 23(b)(1)'s two subsections. Plaintiffs

state that individual adjudications could result in different conclusions regarding whether

defendants' policies violate the law and would establish incompatible standards for

defendants. Defendants contend there is no real risk of multiple actions because no

employees complained of the practices before this lawsuit began. They are also certain that

individual lawsuits would not result since "[i]n the time since this action has been

commenced, no individual actions have been filed." Defs.' Mem. of Law in Opp'n, Dkt. No.

310, 31.

　　　　The risk of inconsistent adjudications is low because defendants, and presumably

most if not all of its employees, are situated within the Northern District of New York and all

related cases would likely be assigned to the same Judge. Further, while defendants'

speculation that no individual action will be brought simply because none have been

commenced thus far is less than convincing, plaintiffs have failed to sustain their burden to

demonstrate that the risk of multiple actions is real and not hypothetical. Accordingly, class

certification of Subclass I is not appropriate under Rule 23(b)(1).

## 5.  **Supplemental Jurisdiction**

Defendants argue supplemental jurisdiction should not be exercised over the NYLL claims.  They contend a hybrid action with both an opt-in FLSA collective action and an opt-out NYLL class is inherently confusing.  See De La Cruz, 2005 WL 5419056, at *6.  They also argue that the opt-out scheme for the NYLL claims thwarts congressional intent to use an opt-in scheme for FLSA claims and that the state law claims threaten to overwhelm the FLSA claims .  See id. at *7.  Plaintiffs maintain that a Rule 23 action and FLSA collective action are compatible and that supplemental jurisdiction should be freely exercised over concurrent state law wage and hour actions.

A federal court may decline to exercise supplemental jurisdiction where a state law claim "substantially predominates" over federal claims.  28 U.S.C. § 1367(c)(2); see Lindsay v. Gov't Emps. Ins. Co., 448 F.3d 416, 425 & n.12 (D.C. Cir. 2006).  "[T]he decision to decline supplemental jurisdiction should be guided by an assessment of 'judicial economy, convenience, fairness, and comity.'"  Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 162 (S.D.N.Y. 2008) (quoting Klein & Co. Futures, Inc. v. Bd. of Trade, 464 F.3d 255, 262 (2d Cir. 2006)).  Like in Damassia, none of the above mentioned factors counsel against exercising supplemental jurisdiction here.  The underlying factual bases for the federal and state claims are identical in this case.  The claims are based on the same allegedly unlawful policies, applied in the same uniform manner to all hourly employees.  It would be neither convenient nor economical to relitigate these policies in state court.  Similarly, fairness weighs in favor of exercising supplemental jurisdiction when taking into account the possible fear of reprisal and other reasons why an employee may not opt-in to a FLSA collective action.  Lastly, comity is

no hurdle to supplemental jurisdiction as NYLL largely parallels the FLSA particularly with respect to the violations alleged in this matter.

Four circuits have considered the propriety of a district court's exercise of supplemental jurisdiction over state law wage and hour claims that are supplemental to a FLSA collective action.  See Ervin v. OS Rest. Servs., Inc., --- F.3d ----, 2011 WL 135708, at *1 (7th Cir. 2011) ("Nothing in the text of the FLSA or the procedures established by the statute suggests either that the FLSA was intended generally to oust other ordinary procedures used in federal court or that class actions in particular could not be combined with an FLSA proceeding."); Wang v. Chinese Daily News, Inc., 623 F.3d 743, 761 (9th Cir. 2010) (following the District of Columbia Circuit and finding the exercise of supplemental jurisdiction over state law claims proper because no novel questions of state law were present and state and federal claims were factually similar); Lindsay, 448 F.3d at 425 (concluding, in the context of an appeal under Rule 23(f), that the FLSA does not necessarily preclude an exercise of supplemental jurisdiction over related state law claims); De Asencio v. Tyson Foods., Inc., 342 F.3d 301, 312 (3d Cir. 2003) (determining that district court presiding over FLSA collective action erroneously exercised supplemental jurisdiction over state law Rule 23 claims).

Of the four circuits that have authored opinions on the issue, three have permitted simultaneous Rule 23 and FLSA section 216(b) actions.  The Third Circuit's decision in De Asencio  finding the two actions incompatible is distinguishable from the facts here.  In concluding that the district court improperly abused its discretion by exercising supplemental jurisdiction over a state law wage class action, the De Ascencio Court considered the novel issues of state law involved which would have required a more intensive factual inquiry than

that needed for the FLSA claim.  342 F.3d at 311.  As previously discussed, the NYLL

violations alleged by plaintiffs here stem from the same policies and practices of defendants,

and NYLL largely parallels the FLSA.  Thus no novel issues of state law exist to deter the

exercise of supplemental jurisdiction.

      Further, district courts in the Second Circuit routinely allow hybrid wage and hour

suits with opt-in FLSA collective actions alongside opt-out Rule 23 class actions.  <u>See e.g.</u>,

<u>Duchene v. Michael L. Cetta, Inc.</u>, 244 F.R.D. 202, 204 (S.D.N.Y. 2007) ("[C]ourts in the

Second Circuit routinely certify class action[s] in FLSA matters so that New York State and

federal wage and hour claims are considered together."); <u>see also</u> <u>Damassia</u>, 250 F.R.D. at

164 (permitting hybrid action based on the overwhelming precedent in the Second Circuit

supporting certification of simultaneous NYLL class actions and FLSA collective actions);

<u>Guzman v. VLM, Inc.</u>, No. 07-CV-1126, 2008 WL 597186, at *10 (E.D.N.Y. Mar. 2, 2008)

("[I]t is routine for courts in the Second Circuit to certify state labor law classes in FLSA

actions."); <u>Iglesias-Mendoza v. La Belle Farm, Inc.</u>, 239 F.R.D. 363, 374-75 (S.D.N.Y. 2007)

(rejecting defendant's contention that supplemental jurisdiction should not be exercised over

NYLL claims in a simultaneous FLSA collective action and Rule 23 NYLL suit); <u>Brickey v.</u>

<u>Dolencorp, Inc.</u>, 244 F.R.D. 176, 179 (W.D.N.Y. 2007) ("Rule 23 and FLSA actions are

routinely prosecuted together . . . .").

      Nor does <u>De La Cruz</u> compel a different result.  In <u>De La Cruz</u>, Judge McAvoy

noted that "a notice that calls both for a decision to opt-in to a collective action and also

whether to opt-out of the class action . . . seems [to be] an inherently difficult task to [do] . . .

in a non-confusing manner."  2005 WL 5419056, at *6 (quoting <u>De La Fuente v. FPM Ipsen</u>

<u>Heat Treating, Inc.</u>, 2002 WL 31819226, at *2 (N.D. Ill. 2002)).  While confusion is a

legitimate concern, the proposed class members in <u>De La Cruz</u> consisted of migrant farm workers, many of whom did not speak English and likely had very little understanding of the United States' legal system.[8]  2005 WL 5419056, at *6.  There is no indication that any of the proposed class members in this case would face those added obstacles.  Any potential confusion may be alleviated by carefully drafted notices and "any confusion that the dual notices may cause" does not "significantly undermine the superiority of a class action." <u>Guzman</u>, 2008 WL 597186 at *8.  Lastly, congressional intent would not be thwarted by permitting simultaneous FLSA opt-in and Rule 23 out-out actions.  <u>See</u> <u>Damassia</u>, 250 F.R.D. at 162 ("[I]t is not correct that allowing a class action under these circumstances would 'nullify Congress's intent.'").  <u>Contra</u> <u>De La Cruz</u>, 2005 WL 5419056, at *7.  The <u>Damassia</u> Court noted that section 216(b) applies only to FLSA wage claims, and Congress has not voiced its intent with respect to wage claims generally.  250 F.R.D. at 162.

Finally, the proposed NYLL class would not overwhelm the FLSA collective action as defendants contend.  <u>See</u> <u>De La Cruz</u>, 2005 WL 5419056, at *7 (denying certification because state law claims predominated based in part on the "sheer numbers" where no members had yet opted-in to the FLSA action).  Whether state law claims predominate over federal claims relates to the <u>type</u> of the claim, not the number of potential class members. <u>Damassia</u>, 250 F.R.D. at 162 (citing <u>Lindsay</u>, 448 F.3d at 425)).  The type of state law claims

---

[8]  The court also found the confusion would be exacerbated by New York Civil Practice Law and Rule ("CPLR") section 901(b), "which would require persons opting out of the state law class action to waive liquidated damages available under the Labor Law."  <u>De La Cruz</u>, 2005 WL 5419056, at *6.  This concern is no longer applicable as the Supreme Court has held that CPLR section 901(b) does not apply to Rule 23 class actions and that liquidated damages available under New York law may be pursued in a federal class action.  <u>Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.</u>, 559 U.S. ---,130 S. Ct. 1431, 1443-44 (2010).

here derive from the same set of facts relevant to the FLSA claims and thus the state law claims would not predominate over the federal claims.

Certification of the NYLL class alongside the conditionally certified section 216(b) FLSA collective action is appropriate in light of precedent in the Second, Seventh, Ninth, and District of Columbia Circuits supporting certification of simultaneous state labor law class actions and FLSA collective actions.

### 6. Subclass IV

As previously discussed, for the ERISA subclass to be certified, either Subclass I or Subclass II must first meet the certification requirements because the violations alleged in those subclasses form the basis for relief under Subclass IV. Subclass IV then must independently meet the Rule 23 requirements. To clarify, after an analysis of the Rule 23 requirements, Subclass I will be certified and Subclass II will not.

Plaintiffs have not presented any evidence regarding defendants' retirement plan or the ERISA subclass despite an opportunity to do so. The parties were permitted to engage in limited discovery relating to plaintiffs' instant motion for class certification but the record is devoid of any evidence relating to the ERISA subclass. It is unclear how many potential class members participated in the retirement plan at issue. Even though numerosity is met for Subclass I based on the 2,360 hourly employees and the uniform application of the automatic meal deduction policy, we are left guessing whether all of those employees, none, or a number in between participated in the retirement plan. Nor have plaintiffs met their burden of establishing commonality and typicality for Subclass IV. In fact, it is not clear that any of the named plaintiffs even participated in defendants' retirement plan. Neither the affidavits submitted by Colozzi, Aiken, or Correia, nor the interrogatory responses from the

Case 5:08-cv-01220-DNH-ATB    Document 278    Filed 03/08/11    Page 34 of 37


opt-in plaintiffs provide any details regarding the retirement plan or the ERISA claims.  The Rule 23(a) prerequisites have not been met and there is no need to address the Rule 23(b) requirements.  Class certification of <u>Subclass IV</u> will be denied.

### 7.  <u>Appointment of Class Counsel under Rule 23(g)</u>

Plaintiffs' attorneys have petitioned to be appointed class counsel pursuant to Rule 23(g).  To be appointed, counsel "must fairly and adequately represent the interests of the class" and meet the requirements of Rule 23(g)(1)(B) and (C), which state, <u>inter alia</u>, that a court must consider (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(B)-(C).

Thomas & Solomon LLP has investigated the claims in this case and has represented the plaintiffs since the start of this litigation over two years ago.  Their focus as a law firm is on employment law, and in particular, wage and hour class actions.  They are currently handling a number of wage and hour class actions throughout the country and have represented plaintiffs in complex employment litigation in the past.  Plaintiffs' submissions emphasize firm partner and counsel on this case Patrick J. Solomon's qualifications, including his participation on various committees relating to employment and labor law and his experience as a speaker on these topics.  Lastly, Thomas & Solomon vows to litigate this case to conclusion and dedicate the resources necessary to achieve a successful outcome for class members.  After consideration of the requirements of Rule 23(g), given their

experience and expertise in this area of law, plaintiffs' counsel will be appointed as class counsel.

## IV. **CONCLUSION**

Defendants' motion for partial summary judgment dismissing three opt-in plaintiffs from the FLSA collective action will be granted because the disputed plaintiffs do not qualify under the January 26, 2009, conditional certification order. The disputed plaintiffs admitted in their interrogatory responses that they did not work through or during a meal break without compensation and thus they fall outside the conditionally certified FLSA class.

Plaintiffs' motion for certification of Subclass I, the Meal Break Deduction Class, will be granted because plaintiffs have satisfied the Rule 23(a) requirements by a preponderance of the evidence. They have also demonstrated that certification is appropriate under Rule 23(b)(3) because questions common to the class predominate over individual questions and class litigation is a superior method of adjudicating these claims.

Plaintiffs' motion for certification of Subclass II, the Pre and Postliminary Work Class, will be denied. Plaintiffs cannot satisfy the first Rule 23(a) prerequisite of numerosity based solely on three affidavits and 21 interrogatory responses. Certification of Subclass IV, the ERISA Class, will likewise be denied because plaintiffs are unable to meet the Rule 23(a) requirements. The sparse evidence offered by plaintiffs in support of Subclass IV is insufficient to meet their burden on a Rule 23 motion for class certification.

Finally, Thomas & Solomon LLP will be appointed class counsel for Subclass I pursuant to Rule 23(g) based on their experience in this area of law and their commitment to litigate this class action to completion.

Therefore, it is

ORDERED that

1.  Defendants' motion for partial summary judgment dismissing the three disputed opt-in plaintiffs who failed to assert in the court approved interrogatories that they worked without pay during a meal break is GRANTED;

2.  The following plaintiffs are DISMISSED from the Fair Labor Standards Act collective action:

Mary Ellen Hare, Shirleen Bennett, and Shari Schwartz;

3.  Plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 23 is GRANTED in part and DENIED in part as follows:

(1) Class certification is GRANTED as to Subclass I, the "Meal Break Deduction Class," and includes all current and formerly hourly employees of defendants from November 13, 2002, to present whose pay was subject to an automatic 30 minute deduction but were not afforded a bona fide meal period of at least 30 minutes;

(2) Class certification is DENIED as to Subclass II, the "Pre and Postliminary Work Class";

(3) Class certification is DENIED as moot as to Subclass III, the "Regular Rate Class"; and

(4) Class certification is DENIED as to Subclass IV, the "ERISA Class";

4.  Thomas & Solomon LLP is appointed class counsel pursuant to Federal Rule of Civil Procedure 23(g); and

5.  The matter is referred back to Magistrate Judge David Peebles for further pre-trial proceedings.

- 36 -

IT IS SO ORDERED.

_____
United States District Judge

Dated: March 8, 2011
      Utica, New York.